**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

PAIGE GREENWELL and ZACHARY )
FLUKER, on behalf of themselves and all other )
persons similarly situated, known and unknown, )
          )   Case No. 4:15-cv-00742-DPM
        Plaintiffs, )
          )   Judge Marshall
        v. )
          )
R WINGS R WILD, LLC, CONWAY WILD )
WINGS, LLC, NORTH LITTLE ROCK WINGS, )
LLC, FORT SMITH FIERY HOT, LLC, )
JONESBORO WINGS, LLC, WINGIT, LLC, )
I-40 WINGS, LLC, EDMOND WINGS, LLC, )
RWINGS ROCK, LLC, TULSA WINGS, LLC, )
SHAWNEE WINGS, LLC, MIDDELWINGS, LLC, )
WILD WINGS WEST, L.L.C., OWASSO WINGS, )
LLC, YUKON WINGS, LLC, NORMAN WINGS, )
LLC, STILLWATER WINGS, LLC and )
JEROMY HOWARD, individually, )
          )
        Defendants. )

**INDEX OF EXHIBITS TO
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT,
FOR APPOINTMENT OF SETTLEMENT ADMINISTRATOR, AND
FOR APPROVAL OF SERVICE AWARDS, ATTORNEY'S FEES AND COSTS**

Joint Stipulation of Settlement.............................................................................1

    List of Plaintiffs, Settlement Awards, and Service Awards.......................A

Declaration of Douglas M. Werman...................................................................2

    Werman Salas P.C. Billing Statement .........................................................A

Declaration of Josh Sanford................................................................................3

    Sanford Law Firm, PLLC Billing Statement ..............................................A

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| PAIGE GREENWELL and ZACHARY FLUKER, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) | |
| | ) | Case No. 4:15-cv-00742-DPM |
| Plaintiffs, | ) ) | |
| | ) | Judge Marshall |
| v. | ) ) | JURY TRIAL DEMANDED |
| R WINGS R WILD, LLC, CONWAY WILD WINGS, LLC, NORTH LITTLE ROCK WINGS, LLC, FORT SMITH FIERY HOT, LLC, JONESBORO WINGS, LLC, WINGIT, LLC, I-40 WINGS, LLC, EDMOND WINGS, LLC, RWINGS ROCK, LLC, TULSA WINGS, LLC, SHAWNEE WINGS, LLC, MIDDELWINGS, LLC, WILD WINGS WEST, L.L.C., OWASSO WINGS, LLC, YUKON WINGS, LLC, NORMAN WINGS, LLC, STILLWATER WINGS, LLC and JEROMY HOWARD, individually, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## JOINT STIPULATION OF SETTLEMENT

This Joint Stipulation of Settlement ("Joint Stipulation") was made and entered into by, between, and among Paige Greenwell and Zachary Fluker ("Named Plaintiffs"), on behalf of themselves and the Opt-in Plaintiffs, who are identified on Exhibit A, and Defendants R Wings R Wild, LLC, Conway Wild Wings, LLC, North Little Rock Wings, LLC, Fort Smith Fiery Hot, LLC, Jonesboro Wings, LLC, Wingit, LLC, I-40 Wings, LLC, Edmond Wings, LLC, R Wings Rock, LLC, Tulsa Wings, LLC, Shawnee Wings, LLC, Middelwings, LLC, Wild Wings West, L.L.C., Owasso Wings, LLC, Yukon Wings, LLC, Norman Wings, LLC, Stillwater Wings, LLC and Jeromy Howard, Individually (collectively, "Defendants"), and is conditioned upon the Court's approval.

1.     <u>DEFINITIONS</u>

The following terms, when used in this Joint Stipulation, have the meanings set forth below, except when they are otherwise or more precisely defined in another section.

(a)     "Action" means the civil action filed in the Court, captioned *Greenwell, et al. v. R Wings R Wild, LLC, et al.,* Case Number 4:15-cv-00742-DPM.

(b)     "Plaintiffs' Counsel" or "Class Counsel" means all attorneys presently or at any time during the pendency of this lawsuit who Werman Salas P.C. and the Sanford Law Firm, as well as the entities themselves.

(c)     "Court" means the United States District Court for the Eastern District of Arkansas, Western Division.

(d)     "Effective Date" means the date the Court approves this Settlement Agreement in substantially the form as presented by the Parties, and no objections are made to such approval, the date the Order of Final Approval is entered by the Court.

(e)     "Opt-In Plaintiffs" are identified on Exhibit A, hereto, and include persons who timely filed Consent Forms to be a party-plaintiffs to the Action.  This term excludes any person who withdrew his or her Consent Form or were later dismissed from the Action.

(f)     "Parties" means Plaintiffs and Defendants, collectively, and separately, each "Party."

(g)     "Defendants" means R Wings R Wild, LLC; Conway Wild Wings, LLC; North Little Rock Wings, LLC; Fort Smith Fiery Hot, LLC; Jonesboro Wings, LLC; Wingit, LLC; I-40 Wings, LLC; Edmond Wings, LLC; RWings Rock, LLC; Tulsa Wings, LLC; Shawnee Wings, LLC; Middelwings, LLC; Wild Wings West, L.L.C.; Owasso Wings, LLC; Yukon Wings, LLC; Norman Wings, LLC; Stillwater Wings, LLC; and Jeromy Howard, individually.

(h)      "Released Parties" means Defendants (as defined above) and their former and present parents, subsidiaries, and affiliated corporations, and their officers, directors, employees, partners, shareholders and agents, and any other successors, assigns, or legal representatives.

(i)      "Plaintiffs" means Named Plaintiffs and Opt-in Plaintiffs, collectively.

(j)      "Settlement" shall mean the resolution of the Action as effectuated by the Joint Stipulation.

(k)      "Settlement Account" shall be a Qualified Settlement Fund established by the Settlement Administrator under Section 468B of the Internal Revenue Code and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, *et seq*.

(l)      "Settlement Class Members" means the Named Plaintiffs and Opt-In Plaintiffs identified in Exhibit A.

(m)      "Settlement Payments" means the amounts to be paid to Settlement Class Members from the Net Settlement Fund as described in Section 4(d) of this Joint Stipulation.

2.      <u>THIS JOINT STIPULATION IS CONTINGENT ON COURT APPROVAL</u>

If, for any reason, the material terms of this Joint Stipulation are not approved by the Court, this Joint Stipulation will be void and of no force and effect.  Further, nothing from the settlement process, including documents created or obtained through the settlement process, shall be admissible as evidence in the Action or used in any way contrary to the Parties' respective interests.

3.      <u>STATEMENT OF NO ADMISSION</u>

The Parties agree, by entering this agreement or any final settlement agreement, Defendants in no way admit any violation of law or any liability to Class Representatives, individually or collectively, and that Defendants expressly deny all such liability.  Settlement of this lawsuit and all acts performed or documents executed in furtherance of this agreement, any

final settlement agreement, or the settlement embodied therein (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or of the truth of the factual allegations in any and all Complaints filed in this lawsuit; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative, or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for collective action treatment other than for purposes of administering this agreement or the final settlement agreement.

4.     MONETARY TERMS OF SETTLEMENT

(a)     In order to settle the Action, and as consideration for the Named Plaintiffs' and Opt-in Plaintiffs' release of claims, dismissal of the Action, and the other good and valuable consideration described herein that the Named Plaintiff and Opt-In Plaintiffs are providing to Defendants, Defendants will deposit into the Settlement Account $490,000.00, which will be controlled by the Settlement Administrator, and which shall be used to provide for: (i) Settlement Payments to the Plaintiffs, as described in this Joint Stipulation; (ii) Service Awards to the Named Plaintiffs and certain Opt-In Plaintiffs, as defined in 4(b)(iii), below; (iii) Plaintiffs' Attorneys' Fees, as described herein; (iv) Plaintiffs' Litigation Expenses, as described herein; and (v) Settlement Administration Expenses, as described herein.

(b)     The term "Settlement Fund" shall refer to the funds that will be distributed in accordance with this Joint Stipulation. The Settlement Fund shall not exceed $490,000.00, exclusive of Defendants' payment of the employer's share of applicable state and federal payroll taxes, as provided in Section 4(f) below, and shall be allocated as follows, subject to Court approval:

(i)     The term "Net Settlement Fund" is the amount available from the Settlement Fund for the *pro rata* Settlement Payments to Plaintiffs, and shall be the Settlement Fund minus the amounts paid to: (i) the Named Plaintiffs and certain Opt-In Plaintiffs, as defined in subsection 4(b)(iii), below, as Service Awards; (ii) Class Counsel for Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses; and (iii) the Settlement Administrator, for Settlement Administration Expenses. The amounts to be deducted from the Settlement Fund are set forth below in subparagraphs (ii), (iii), (iv), and (v).

(ii)     A payment of $7,500.00 to each Named Plaintiff as Service Awards.

(iii)     A payment of $250.00 to each Opt-In Plaintiff who gave deposition testimony as Service Awards.

(iv)     A sum of no more than $274,606.81, to be paid to Class Counsel for Plaintiffs' Attorneys' Fees, and an amount not to exceed $51,796.27 to be paid to Class Counsel for Plaintiffs' Litigation Expenses.

(v)     An amount not to exceed $3,459.00 to be paid to Analytics LLC for settlement administration fees and costs.

(c)     Defendants' total obligation under this Joint Stipulation shall not exceed $490,000.00, inclusive of all payments described in this section, including the employees' share of any applicable tax withholdings, but excluding Defendants' employer share of applicable state and federal payroll taxes associated with the Settlement Payments.

(d)     Each Settlement Class Member's Settlement Payment shall be calculated as follows:

(i)     [(Hours * $7.25) – (Hours * the sub-minimum tip-credit wage rate the Settlement Class Member was paid) * 25%];

(ii)      Each Settlement Class Member's Total Minimum Wages shall be divided by the sum of all Settlement Class Members' Total Minimum Wages. The quotient shall represent each Settlement Class Member's Pro Rata Factor. Exhibit A provisionally identifies each Settlement Class Member and his or her Pro Rata Factor.

(iii)   All Settlement Class Members shall be eligible to receive a minimum Settlement Payment of $25.00 ("Minimum Settlement Payment").

(iv)   Each Settlement Class Member's Settlement Payment shall be computed as follows:

(1)     Each Settlement Class Member's Pro Rata Factor will be multiplied by the Net Settlement Fund. The result will be referred herein as "Preliminary Settlement Award."

(2)     If a Settlement Class Member's Preliminary Settlement Award is less than $25.00, the Settlement Class Member's Settlement Payment will be increased to the Minimum Settlement Payment of $25.00.

(3)     All Minimum Settlement Payments shall be subtracted from the Net Settlement Fund, which shall yield the "Adjusted Net Settlement Fund."  Each Settlement Class Member whose Preliminary Settlement Award exceeds $25.00 will have his or her Pro Rata Factor recalculated, omitting data from all Minimum Settlement Payment recipients, and that Recalculated Pro Rata Factor shall be divided by the Adjusted Net Settlement Fund.  The quotient will be referred to as the "Adjusted Pro Rata Factor." The Settlement Payment for each Settlement Class Member whose Settlement Award exceeds $25.00 shall be computed by multiplying his or her Adjusted Pro Rata Factor by the Adjusted Net Settlement Fund. If, after the computations described in this paragraph are performed, any Settlement Class Member's

Settlement Payment is less than $25.00, the calculations described Section 4(d)(v) will be repeated so that each Settlement Class Member is eligible to receive a minimum Settlement Payment of $25.00.

The totals identified in this section shall not affect the total Defendants owe as defined in the Settlement Fund.

(e)     The Settlement Administrator shall issue one check for each Settlement Payment allocated as follows:

(i)      One-half of each Settlement Payment will represent wages.  Regular employee payroll deductions shall be taken out of this portion of each Settlement Class Member's Settlement Payment as determined by the Settlement Administrator. Federal tax on that amount will be withheld for all Settlement Class Members based upon a flat withholding rate, which is reasonable and customary in accordance with Treas. Reg. 31.3402(g)-1(a)(2), and as is calculated by the Settlement Administrator. State tax will be withheld according to applicable state withholding requirements.  The Settlement Administrator shall issue each Settlement Class Member an IRS Form W-2 for this portion of the Settlement Payment.

(ii)     One-half of each Settlement Payment will represent liquidated damages. Payroll deductions and income taxes shall not be taken from this portion of each Settlement Class Member's Settlement Payment.  The Service Awards for Named Plaintiffs and Opt-in Plaintiffs shall likewise be treated as non-wage income.  The Settlement Administrator shall issue each Opt-In Plaintiff an IRS Form 1099 for the liquidated damages portion of each Settlement Payment.  The Settlement Administrator shall also issue Named Plaintiffs and certain Opt-In Plaintiffs, as defined in subsection 4(b)(iii), above, IRS Form 1099s for their Service Awards.

(iii)       The back of each check to each Settlement Class Member will contain the following limited endorsement:

> I agree to release all minimum wage, overtime or other claims to compensation for the hours I worked for Defendants between December 5, 2012 and the [INSERT EFFECTIVE DATE] under the Fair Labor Standards Act, 29 U.S.C. Section 201, *et seq.,* as well as applicable state law (including, without limitation, the Arkansas Minimum Wage Act).

(f)       Defendants shall be responsible for payment of the employer's portion of all applicable payroll taxes for each Settlement Payment made pursuant to Section 4 (e)(i).  Other than the withholding and reporting requirements herein, Settlement Class Members shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Joint Stipulation.

(g)       To the extent permitted by law, in no event shall any Settlement Payment or Service Award create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Service Award be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

5.    RELEASE OF CLAIMS

(i)       In exchange for their Settlement Payments, Opt-In Plaintiffs shall be deemed to have released and discharged the Released Parties from any and all minimum wage, overtime or other claim to compensation for the hours each worked for Defendants between December 5, 2012 and the Effective Date. The Parties further stipulate and agree that each FLSA Opt-In Plaintiff who negotiates a check representing his or her distribution of the Net Settlement Fund

has released, and will be deemed to have released, any and all minimum wage, overtime or other claim to compensation, under the Fair Labor Standards Act, 29 U.S.C. Section 201, *et seq.,* as well as applicable state law (including, without limitation, the Arkansas Minimum Wage Act) for the hours each worked for the Companies between December 5, 2012 and the Effective Date.

(ii)     In exchange for their Service Awards, following the Court's approval of this Settlement Agreement, Named Plaintiffs shall release and discharge the Released Parties from all claims or demands each has or may have, known or unknown, against Defendants, from the beginning of time through the Effective Date.  The released claims include, but are not limited to, all claims Class Representatives have or may have, known or unknown, arising under Title VII of the Civil Rights Act; the Age Discrimination in Employment Act, as amended; the Occupational Health and Safety Act; the Texas Labor Code, the Fair Labor Standards Act, the Family Medical Leave Act; the American with Disabilities Act, as amended; the Employee Retirement Income and Security Act; the Equal Pay Act; the Genetic Information Nondiscrimination Act; the Uniformed Services Employment and Reemployment Rights Act; as well as any claims for retaliation, breach of contract (written or oral), wrongful or retaliatory discharge, discrimination or harassment on the basis of race, color, national origin, religion, sex, gender, gender identity, sexual orientation, age, disability, all claims for unemployment compensation, intentional infliction of emotional distress, assault, battery,  invasion of privacy, fraud and misrepresentation, tortious interference with contract, lost past and future wages, loss of earnings,  property damage, exemplary or punitive damages, and any and all claims arising under any federal, state, or local law governing the employment or working relationship; *provided, however,* that nothing in this release provision shall modify, release, diminish or

enlarge any existing personal injury, occupational injury, occupational disease or worker's compensation claim.

(iii)    Class Counsel, in consideration of this Settlement Agreement, shall forever and fully release Defendants from all claims or demands for attorneys' fees and costs they have or may claim to have against Defendants.

6.    ATTORNEYS' FEES AND EXPENSES AND NAMED PLAINTIFFS' AND CERTAIN OPT-IN PLAINTIFFS' SERVICE AWARDS

(a)    Class Counsel may make an application or applications to the Court, or any other Court taking jurisdiction over the Action, for an award of Plaintiffs' Attorneys' Fees and an award of Plaintiffs' Litigation Expenses.  The amount of the Plaintiffs' Attorneys' Fees will not exceed $274,606.81.  The amount of Plaintiffs' Litigation Expenses shall not exceed $51,796.27. Such application or applications shall be filed in connection with the Motion for Approval of the Joint Stipulation. Defendants will not oppose any such application for fees or costs.   Class Counsel and Plaintiffs acknowledge these totals are part of the Settlement Fund and not in addition to the Settlement Fund.

(b)    Plaintiffs and Class Counsel understand and agree that Class Counsel's Fees and Expenses will be the full, final, and complete payment of all attorneys' fees and costs arising from and/or relating to the representation of the Named Plaintiff, Opt-in Plaintiffs, or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of the Action.  As an inducement to Defendants to enter into this Joint Stipulation, and as a material condition thereof, Plaintiffs and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against Defendants for attorneys' fees or costs arising from or relating to the individuals and matters identified in this Joint Stipulation. As a further inducement to Defendants to enter into this Joint Stipulation, and as a material

condition thereof, Plaintiffs and Class Counsel further understand and agree that the fee and cost payments made pursuant to this Section to Class Counsel for Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses, will be the full, final, and complete payment of all attorneys' fees and costs that are released, acquitted, or discharged pursuant to this Joint Stipulation. Furthermore, Plaintiffs and Class Counsel represent and warrant that no attorney, other than Class Counsel, has any attorney's fee lien on or claim to any proceeds arising out of, by virtue of, or in connection with the Action, and that the terms of this Joint Stipulation shall fully satisfy any and all claims by any attorney arising out of or by virtue of or in connection with the Action. Nothing in this Section shall preclude Plaintiffs from appealing the amounts allocated to Class Counsel for Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses should the sum awarded by the Court fall below the amount described in Section 4(b)(iv) of this Joint Stipulation.  If Plaintiffs' Counsel elect not to appeal or if the Court of Appeals affirms the decision, only the reduced amounts will be deemed to be Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses for purposes of this Joint Stipulation. Any remaining or reduced amounts shall be added to the Net Settlement Fund available for distribution to Settlement Class Members.

(c)     All of Defendants' own legal fees, costs and expenses incurred in this Action shall be borne by Defendants.

(d)     Class Counsel may apply for Service Awards to Named Plaintiffs in an amount not to exceed Seven Thousand Five Hundred Dollars ($7,500.00) each, in acknowledgment of their time and effort spent prosecuting this Action on behalf of Settlement Class Members, including conferring with Class Counsel, giving deposition testimony, participating in the Court's supervised mediation of the Action, and in recovering wages on behalf of all Opt-In

Plaintiffs. The Service Awards shall be paid from the Net Settlement Fund. Defendants agree not to oppose such application, so long as it is consistent with the provisions of this Joint Stipulation.

(e)     Class Counsel may apply for Service Awards not to exceed $250.00 to each Opt-In Plaintiff who gave deposition testimony in the Action. The Service Awards shall be paid from the Net Settlement Fund. Defendants agree not to oppose such application, so long as it is consistent with the provisions of this Joint Stipulation. The 14 Opt-In Plaintiffs who gave a deposition in the Action are identified on Exhibit A.

7.     SETTLEMENT TIMELINE

The Parties agree to follow the following timeline for the completion of the Settlement and dismissal of the Action:

(a)     Settlement Approval: Plaintiff shall draft and file an Unopposed Motion for Settlement Approval on February 1, 2018.

(b)     Production of Class Data: No later than 7 days after the Effective Date, Class Counsel shall provide to the Defendants' counsel and the Settlement Administrator an Excel spreadsheet identifying each of the Settlement Class Members who timely submitted an opt-in consent form, along with the amount of their *pro rata* share of the Net Settlement Fund, as identified in Exhibit A. The Settlement Administrator shall have 30 days from the receipt of the Excel spreadsheet to issue checks to the Settlement Class Members. If checks representing unpaid wages are issued, appropriate deductions will be made, and the Companies shall be responsible for paying the employer's share of taxes attributable to those amounts. The Companies shall also issue separate checks for service awards, reportable by Form 1099.

(c)     Payment of the Employer Share of Payroll Taxes: No later than 14 days of the Effective Date, the Settlement Administrator shall determine the employer's share of payroll employment taxes on Settlement Payments to Settlement Class Members, and shall communicate

12

such amount to Defendants with a detailed explanation of the calculations.  In the event of any dispute as to the calculation of employer's share of payroll taxes, the Parties and Settlement Administrator shall meet and confer in good faith in an attempt to resolve the dispute.  If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. The Settlement Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings.  Defendants agree to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Section.

(d)     Payment of Total Settlement Payment: No later than 21 days after the Effective Date, Defendants will deposit $490,000, plus the employer's share of applicable payroll taxes into the Settlement Account created by the Settlement Administrator.

(e)     Update of Settlement Class Members' Addresses: If requested by Class Counsel, the Settlement Administrator will run all the social security numbers and names through the National Change of Address (NCOA) Database, or a comparable database, to obtain updated addresses for the Settlement Class Members.

(f)     Issuance of Settlement Payments, Service Award and Class Counsel's Fees and Expenses: The Settlement Administrator shall make the following payments:

(i)     Within 30 days of receiving the Settlement Fund, the Settlement Administrator shall deliver Settlement Payments via First Class U.S. Mail to each Opt-In Plaintiff for his or her ratable share of the Settlement Fund as computed in Section 4(d) of this Joint Stipulation. The Settlement Payment checks shall be negotiable by Settlement Class Members for 150 days from the date they were mailed by the Settlement Administrator.  The

Settlement Administrator shall include a cover letter with each check to each Settlement Class Member that briefly explains why the Settlement Class Members is receiving a Settlement Payment and what the Settlement Payment represents. The face of each check shall clearly state that the check must be cashed within 150 days. Envelopes containing a Settlement Payment shall be marked on its face with the words "Buffalo Wild Wings Wage Settlement."

(ii)     Within 7 days of receiving the Settlement Fund, the Settlement Administrator shall deliver the Named Plaintiffs' Settlement Payments and the Named Plaintiffs' Service Awards to Class Counsel.

(iii)     Within 7 days of receiving the Settlement Fund, The Settlement Administrator shall deliver Class Counsel's award for Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses, by wire transfer or check, to Class Counsel as Class Counsel directs.

(iv)     If any Settlement Payment check is returned to the Settlement Administrator as undeliverable with a forwarding address, the Settlement Administrator will forward the Settlement Payment to the forwarding address. If any Settlement Payment is returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement Administrator will run a new search of the social security number and name through available databases, such as Accurint, and will forward the Settlement Payment to the new address obtained in this manner, if any.

(v)     Within 14 days of the expiration of the 150 day check cashing period, the Settlement Administrator shall provide to Defendants and Class Counsel: (A) scanned copies of the negotiated Settlement Payment checks; and (B) a list, in Excel format, of the names of all Opt-In Plaintiffs including for each: (1) the amount of the Opt-In Plaintiff's Settlement Payment;

(2) the amount of the Settlement Payment attributed to wages; and (3) the amount of the Settlement Payment attributed to liquidated damages.

(vi)     If, after expiration of the 150 day check cashing period, amounts remain in the Settlement Account, those funds shall revert back to Defendants.  If there are any checks not cashed, the Settlement Administrator shall send one check containing full payment totals of all uncashed checks to Defendants within 7 days of the 150th day.

8.     <u>MUTUAL FULL COOPERATION</u>

The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Joint Stipulation, and exercise good-faith efforts to accomplish the terms and conditions of this Joint Stipulation.

9.     <u>CONSTRUCTION</u>

The terms and conditions of this Joint Stipulation are the result of lengthy, intensive, arm's-length negotiations between and among the Parties.  Accordingly, this Joint Stipulation is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Joint Stipulation.

10.     <u>INTEGRATION</u>

This Joint Stipulation contains the entire agreement between the Parties relating to the Settlement, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein.  There are no undisclosed side agreements between the Parties or their counsel. No rights hereunder may be waived except in writing.

11.     <u>BINDING ON SUCCESSORS AND ASSIGNS</u>

This Joint Stipulation shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

12.     MODIFICATION

This Joint Stipulation may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court.  This Joint Stipulation may not be discharged except by performance with its terms or by a writing signed by the Parties and approved by the Court.

13.     APPLICABLE LAW

The terms of this Joint Stipulation shall be governed by and construed in accordance with Arkansas law.

14.     RETENTION OF JURISDICTION

The Court shall retain exclusive jurisdiction with respect to the implementation and enforcement of the terms of this Joint Stipulation, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Joint Stipulation.

15.     COUNTERPARTS

This Joint Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Joint Stipulation, which shall be binding upon and effective as to all Parties. Signatures transmitted by facsimile or by electronic mail (using portable document format) shall have the same effect as an original ink signature.

16.     PARTIES' AUTHORITY

The signatories hereto represent that they are fully authorized to enter into this Joint Stipulation and bind the respective Parties to its terms and conditions.

17.     CONFIDENTIALITY

The parties agree that Plaintiffs and their counsel, the law firms of Werman Salas, P.C. and Sanford Law Firm, PLLC, and any attorneys working with them, shall not in any manner publicize this settlement or any details of this settlement, including, but not limited to, the dollar amount Defendants agree to pay, on any media, including, but not limited to, online, television, or radio publications or broadcasts, or any print media.

**For Plaintiffs**

Douglas M. Werman – IL Bar No. 6204740
Zachary C. Flowerree – IL Bar No. 6305935
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
312-419-1008
dwerman@flsalaw.com
zflowerree@flsalaw.com

AND

SANFORD LAW FIRM, PLLC

Josh Sanford – Ark. Bar No. 2001037
Joshua West– Ark. Bar No. 2012121
One Financial Center
650 S Shackleford Road, Suite 411
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040
josh@sanfordlawfirm.com
west@sanfordlawfirm.com

ATTORNEYS
FOR PLAINTIFFS PAIGE GREENWELL,
ZACHARY FLUKER and OPT-IN PLAINTIFFS

**For Defendants**

Jay M. Wallace – TX Bar No. 20769200
R. Heath Cheek – TX Bar No. 24053141
Brent D. Hockaday – TX Bar No.
24071295
Bell Nunnally & Martin LLP
3232 McKinney Ave., Suite 1400
Tel: 214-740-1400
Fax: 214-740-1499
Email: jwallace@bellnunnally.com
Email: bhockaday@bellnunnally.com
Email: hcheek@bellnunnally.com

ATTORNEYS FOR DEFENDANTS

The parties agree that Plaintiffs and their counsel, the law firms of Werman Salas, P.C. and Sanford Law Firm, PLLC, and any attorneys working with them, shall not in any manner publicize this settlement or any details of this settlement, including, but not limited to, the dollar amount Defendants agree to pay, on any media, including, but not limited to, online, television, or radio publications or broadcasts, or any print media.

**For Plaintiffs**

_____
Douglas M. Werman – IL Bar No. 6204740
Zachary C. Flowerree – IL Bar No. 6305935
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
312-419-1008
dwerman@flsalaw.com
zflowerree@flsalaw.com

AND

SANFORD LAW FIRM, PLLC

_____
Josh Sanford – Ark. Bar No. 2001037
Joshua West– Ark. Bar No. 2012121
One Financial Center
650 S Shackleford Road, Suite 411
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040
josh@sanfordlawfirm.com
west@sanfordlawfirm.com

ATTORNEYS
FOR PLAINTIFFS PAIGE GREENWELL,
ZACHARY FLUKER and OPT-IN PLAINTIFFS

**For Defendants**

_____
Jay M. Wallace – TX Bar No. 20769200
R. Heath Cheek – TX Bar No. 24053141
Brent D. Hockaday –   TX Bar No. 24071295
Bell Nunnally & Martin LLP
3232 McKinney Ave., Suite 1400
Tel: 214-740-1400
Fax: 214-740-1499
Email: jwallace@bellnunnally.com
Email: bhockaday@bellnunnally.com
Email: hcheek@bellnunnally.com

ATTORNEYS FOR DEFENDANTS

# EXHIBIT A

**Greenwell v. R Wings R Wild**
**Exhibit A**

| | Last Name | First Name | Pro Rata Factor | Settlement Award | Service Award |
|---|---|---|---|---|---|
| 1 | REEDY (JONES) | KELSY | 0.00% | $ 25.00 | |
| 2 | ADAMS | KEVIAUNA | 0.05% | $ 68.70 | |
| 3 | ANDAVERDI-NAVE | ELIZABETH | 0.06% | $ 80.19 | |
| 4 | ANDERSON | TIAYE | 0.28% | $ 387.10 | |
| 5 | Anson | Xenia | 0.10% | $ 133.85 | $ 250.00 |
| 6 | AUSTIN | KARA | 0.47% | $ 667.22 | |
| 7 | BALDWIN | TAYLOR | 0.11% | $ 154.49 | |
| 8 | BALL | DELANEY | 0.05% | $ 77.07 | |
| 9 | BARNES | TAMERA | 0.16% | $ 222.72 | |
| 10 | BARRIERE | CHRISTINA | 0.05% | $ 69.63 | |
| 11 | BARTOK | MIKAELA | 0.05% | $ 67.96 | |
| 12 | BAUMGART | HEATHER | 0.28% | $ 394.55 | |
| 13 | BEAN | TAYLOR | 0.03% | $ 37.24 | |
| 14 | BELCHER | NATASHA | 0.16% | $ 219.01 | |
| 15 | BERNING | SHASTA | 0.08% | $ 118.83 | |
| 16 | BESABE | JAMIE | 1.64% | $ 2,302.23 | |
| 17 | BISHOP | SHARON | 0.85% | $ 1,198.37 | |
| 18 | BLATMAN | BROOKE | 0.57% | $ 799.76 | |
| 19 | BOLIN | SARAH | 0.06% | $ 86.68 | |
| 20 | BOLNER | CANDICE | 0.12% | $ 165.94 | |
| 21 | BOOTH | SKYE | 0.14% | $ 193.63 | |
| 22 | BOYDSTON (D'ZURELLA | CATHRYN | 0.00% | $ 25.00 | |
| 23 | BOYER | MELISSA | 0.00% | $ 25.00 | |
| 24 | BRADSHAW | JESSICA | 0.09% | $ 130.55 | |
| 25 | BRAWNER | ARIEL | 0.00% | $ 25.00 | |
| 26 | BRESSLER | JENNIFER | 0.00% | $ 25.00 | |
| 27 | BRIDGES | LE'CHLOE | 0.11% | $ 152.21 | |
| 28 | BRIMBERRY (NEWMAN | KELLY | 0.00% | $ 25.00 | |
| 29 | BRITTON | ANGELA | 0.90% | $ 1,257.86 | |
| 30 | BROCK | MONTOLLIEA | 0.08% | $ 113.21 | |
| 31 | BROOKS | DARETH | 0.22% | $ 304.17 | |
| 32 | BROWN | KATIE | 0.37% | $ 526.47 | |
| 33 | BRUNO | TIFFANY | 0.92% | $ 1,294.01 | |
| 34 | BUCKNER | KENNETH | 1.08% | $ 1,521.87 | |
| 35 | BURSBY | MELISSA | 0.12% | $ 163.65 | |
| 36 | BUTTS | BRITTANY | 0.13% | $ 182.15 | |
| 37 | CADENA (BOWMAN) | MONIQUE | 0.00% | $ 25.00 | |
| 38 | CAMERON | SIERRA | 0.67% | $ 946.17 | |
| 39 | CAMPBELL | ERIKA | 1.11% | $ 1,564.15 | |
| 40 | CANEDO | KELSEY | 0.02% | $ 32.14 | |
| 41 | CANNON | MEGAN | 0.01% | $ 25.00 | |
| 42 | CARSON | STARLA | 0.07% | $ 102.08 | |
| 43 | CASH | VICTORIA | 0.04% | $ 50.92 | |
| 44 | CASTANEDA | CHRISTINA | 1.49% | $ 2,100.45 | $ 250.00 |

**Greenwell v. R Wings R Wild**
**Exhibit A**

| | Last Name | First Name | Pro Rata Factor | Settlement Award | Service Award |
|---|---|---|---|---|---|
| 45 | CHANCE | KARILYN | 1.13% | $ 1,582.28 | |
| 46 | CHISM | ANTALEKE | 0.04% | $ 60.46 | |
| 47 | CLEMENT-DAVILA | KYLEE | 0.24% | $ 335.50 | |
| 48 | CLEVENGER | CHELSEA | 0.50% | $ 698.52 | |
| 49 | CLINE | CASSANDRA | 0.13% | $ 177.09 | |
| 50 | CLOUSTON | KATHLEEN | 0.38% | $ 535.80 | |
| 51 | COLEMAN | TRACIE | 0.33% | $ 460.78 | |
| 52 | COLEY | SHELBY | 0.55% | $ 777.56 | |
| 53 | COLLINS-DIDIER | HALEY | 0.16% | $ 225.50 | |
| 54 | CONNEL | KAITLIN | 0.02% | $ 25.00 | |
| 55 | COPHER | ANNA | 0.31% | $ 434.79 | |
| 56 | CORONADO | BRITTANY | 0.23% | $ 321.42 | |
| 57 | CROCKER | FAITH | 0.10% | $ 139.29 | |
| 58 | DAVENPORT | ALEXXIS | 0.18% | $ 246.03 | |
| 59 | DAVIES | LACEY | 0.08% | $ 115.43 | |
| 60 | DELEON | DALTON | 0.18% | $ 247.51 | |
| 61 | DEMERY | PAIGE | 0.15% | $ 209.76 | |
| 62 | DILBECK | DUSTY | 1.69% | $ 2,379.36 | $ 250.00 |
| 63 | DO | JACQUELINE | 0.48% | $ 679.46 | |
| 64 | DOBBINS | LISA | 0.05% | $ 68.05 | |
| 65 | DOUGLAS | BRIANNA | 0.05% | $ 73.56 | |
| 66 | DRENNON | SKYLAR | 0.59% | $ 827.34 | $ - |
| 67 | DUELLMAN | DARRIAN | 0.45% | $ 633.54 | |
| 68 | DWIGGINS | KATHARINA | 0.00% | $ 25.00 | |
| 69 | EARLE | AUSTIN | 1.05% | $ 1,480.25 | |
| 70 | EASTEP | MARISA | 0.11% | $ 157.51 | |
| 71 | EDWARDS | SHAWNEE | 0.14% | $ 189.88 | |
| 72 | ELMORE | TANNER | 0.04% | $ 58.05 | |
| 73 | EMANUEL (BROWN) | LINDSEY | 0.46% | $ 645.02 | |
| 74 | FAIRBAIRN | TEENA | 0.00% | $ 25.00 | |
| 75 | Faught-Cordell | Kirstie | 0.00% | $ 25.00 | $ - |
| 76 | FAULKNER | JENNIFER | 0.00% | $ 25.00 | |
| 77 | FELLOWS | RACHEL | 0.14% | $ 201.53 | |
| 78 | FINSON | KAYALAN | 0.95% | $ 1,329.40 | $ 250.00 |
| 79 | FISHER | BROOKE | 0.05% | $ 64.49 | |
| 80 | FLORES | CHLOE | 0.62% | $ 868.56 | |
| 81 | Fluker | Zachary | 0.58% | $ 818.17 | $ 7,500.00 |
| 82 | FONTENOT | MICHAEL | 0.44% | $ 616.61 | |
| 83 | FOWBLE | TERESHA | 0.00% | $ 25.00 | |
| 84 | FUENTES | KIANNA | 0.99% | $ 1,385.81 | |
| 85 | GAMMILL | PAIGE | 0.05% | $ 71.93 | |
| 86 | GARRETT | HANNAH | 1.21% | $ 1,694.02 | |
| 87 | GARRETT | MCKENZIE | 0.03% | $ 44.98 | |
| 88 | George | Ashley | 0.30% | $ 422.21 | |

**Greenwell v. R Wings R Wild**
**Exhibit A**

| | Last Name | First Name | Pro Rata Factor | Settlement Award | Service Award |
|---|---|---|---|---|---|
| 89 | GIBSON | DREA | 0.05% | $ 64.78 | |
| 90 | GIDEAN | KATIE | 0.00% | $ 25.00 | |
| 91 | GIZELBACH | BRITTANY | 1.06% | $ 1,495.03 | |
| 92 | GRANT | DESTINY | 0.00% | $ 25.00 | |
| 93 | GRAY | AMY-LEE | 0.08% | $ 105.84 | |
| 94 | Greenwell | Paige | 0.14% | $ 194.39 | $ 7,500.00 |
| 95 | GURKIN | DEMI | 0.37% | $ 520.95 | |
| 96 | GUTHRIE | KELLY | 0.16% | $ 231.68 | |
| 97 | HAGIE | STEPHANIE | 0.15% | $ 210.92 | |
| 98 | HALL | JESSICA | 0.53% | $ 748.78 | |
| 99 | HARPER | CHELSEA | 0.45% | $ 636.10 | |
| 100 | HARPER | KELSIE | 0.12% | $ 174.38 | |
| 101 | HARRELL | JOSIAH | 0.19% | $ 265.27 | |
| 102 | HARRIS | LEIALOHAIOI | 0.06% | $ 84.01 | |
| 103 | HAYDEN | SHEMERY | 0.37% | $ 520.76 | |
| 104 | HAYES | ASHLEY | 3.80% | $ 5,344.29 | |
| 105 | HEARD | SHEILA | 0.04% | $ 61.05 | |
| 106 | HEARD | TASHEKA | 1.16% | $ 1,626.32 | |
| 107 | HENRICHS-LEWIS | AMBER | 1.01% | $ 1,422.72 | |
| 108 | HENING | NICOLE | 0.31% | $ 432.87 | $ 250.00 |
| 109 | HERMAN | ALEXANDER | 0.58% | $ 819.88 | |
| 110 | HERRINGTON | PATRICIA | 0.07% | $ 105.13 | |
| 111 | HETER | TIFFANY | 0.04% | $ 59.22 | |
| 112 | HIGBEE | AMANDA | 0.51% | $ 712.10 | |
| 113 | HILL | DORA | 0.58% | $ 817.47 | |
| 114 | HILSDON | JEFFREY | 0.26% | $ 371.57 | |
| 115 | HOLDER | CHARISMA | 0.00% | $ 25.00 | |
| 116 | HOPKINS | NATALIE | 0.00% | $ 25.00 | |
| 117 | HUGHES | STEVIE | 0.46% | $ 641.71 | |
| 118 | HUMBLE | TARA | 0.74% | $ 1,046.71 | |
| 119 | HUNTER-BROWN | KASCH | 0.15% | $ 206.48 | |
| 120 | HUTSON | MELISSA | 0.81% | $ 1,134.34 | |
| 121 | JACKS | KARA | 2.41% | $ 3,392.81 | |
| 122 | JACKSON | AMBER | 1.33% | $ 1,861.70 | $ 250.00 |
| 123 | JACKSON | DESTINY | 0.18% | $ 255.06 | |
| 124 | JACKSON | KAYLEE | 0.14% | $ 201.08 | |
| 125 | JACOB | NATASHA | 0.54% | $ 752.51 | |
| 126 | JALALIDDIN | BRITTANI | 0.08% | $ 111.42 | |
| 127 | JARRETT | TANNER | 1.00% | $ 1,405.70 | |
| 128 | JEFFERS | KAYLA | 0.13% | $ 183.13 | |
| 129 | JOHNSON | TEA | 0.13% | $ 183.48 | |
| 130 | JONES | RE'NARBREY | 0.30% | $ 418.18 | |
| 131 | JORDAN | LAURA | 0.81% | $ 1,132.31 | |
| 132 | JORGENSEN | JULIA | 0.00% | $ 25.00 | |

**Greenwell v. R Wings R Wild**
**Exhibit A**

| | Last Name | First Name | Pro Rata Factor | Settlement Award | Service Award |
|---|---|---|---|---|---|
| 133 | KANE | RACHEL | 0.31% | $ 441.07 | |
| 134 | KINZEY | TANYA | 0.06% | $ 88.09 | |
| 135 | KIZER | JILLIANN | 0.46% | $ 646.17 | |
| 136 | KOELSCH | KAYLA | 0.10% | $ 146.99 | |
| 137 | KOLESKI | ALYSSA | 0.22% | $ 304.36 | |
| 138 | KOONE | TAYLOR | 0.00% | $ 25.00 | |
| 139 | KROUTIL | MEGAN | 0.01% | $ 25.00 | |
| 140 | LALLY | JOHN | 0.27% | $ 378.03 | |
| 141 | LASKER | DURQUISHA | 0.19% | $ 263.98 | $ 250.00 |
| 142 | LAWSON | JACOB | 0.17% | $ 234.23 | |
| 143 | LAWSON-SMITH | KATELYN | 0.94% | $ 1,314.94 | |
| 144 | LEE | ASHLEY | 0.67% | $ 938.75 | |
| 145 | LEHEW | ABIGAIL | 0.51% | $ 720.45 | |
| 146 | LESTER (KENNEDY) | FELECIA | 0.00% | $ 25.00 | |
| 147 | LEWIS | KALLIE | 0.00% | $ 25.00 | |
| 148 | LEWIS | RAYVEN | 0.03% | $ 47.13 | |
| 149 | LEWIS | SHARNITA | 0.47% | $ 653.50 | |
| 150 | LINTON | KAITLYN | 0.00% | $ 25.00 | |
| 151 | LISTER | KRISSI | 0.01% | $ 25.00 | |
| 152 | LOEWEN | COURTNEY | 0.35% | $ 498.45 | |
| 153 | LOWTHER | JOSHUA | 0.11% | $ 149.72 | |
| 154 | MAISANO | MELISSA | 0.00% | $ 25.00 | |
| 155 | MANUEL | MATTHEW | 0.97% | $ 1,357.63 | $ 250.00 |
| 156 | MARONEY (BAKER) | CARA | 0.12% | $ 166.35 | |
| 157 | MARTIN | AMANDA E. | 0.03% | $ 35.92 | |
| 158 | MARTIN | BRAD | 0.70% | $ 982.48 | |
| 159 | MASON | KORTNEE | 0.30% | $ 422.12 | |
| 160 | MAYES | SARA | 0.19% | $ 265.56 | $ 250.00 |
| 161 | MCDANIEL | JESSICA | 0.00% | $ 25.00 | |
| 162 | MCDANIELS | KANDICE | 0.83% | $ 1,166.81 | |
| 163 | MCGRATH | KASANDRA | 0.10% | $ 143.95 | |
| 164 | MCKELVEY | KILEY | 0.01% | $ 25.00 | |
| 165 | MCLEMORE STOOPS | AMANDA | 0.00% | $ 25.00 | |
| 166 | MCSPERITT | MEGAN | 0.00% | $ 25.00 | |
| 167 | MEEKS | CAITLIN E. | 0.00% | $ 25.00 | |
| 168 | MEJIA | BRIANA | 0.06% | $ 80.36 | |
| 169 | MELBY | ANDREW | 0.14% | $ 201.78 | |
| 170 | MEZGER | BRANDY | 0.25% | $ 354.20 | |
| 171 | MILBY | CRYSTAL | 0.36% | $ 505.10 | |
| 172 | MILLER | BRIGID | 0.03% | $ 48.42 | |
| 173 | MITCHELL | MARLANA | 0.01% | $ 25.00 | |
| 174 | MIXON | MICHAEL | 0.46% | $ 643.43 | |
| 175 | MOGOLLON | JOSE | 0.60% | $ 837.23 | $ 250.00 |
| 176 | MOODY | TANNER | 0.01% | $ 25.00 | |

**Greenwell v. R Wings R Wild**
**Exhibit A**

| | Last Name | First Name | Pro Rata Factor | Settlement Award | Service Award |
|---|---|---|---|---|---|
| 177 | MOORE | BRIANNA | 0.17% | $ 232.48 | |
| 178 | Moore | Tamora | 0.16% | $ 227.37 | $ 250.00 |
| 179 | MORALES | MEGAN | 0.04% | $ 59.90 | |
| 180 | MORRELL | CANDICE | 0.02% | $ 25.00 | |
| 181 | MORRIS | TONYA | 0.00% | $ 25.00 | |
| 182 | MOSLEY | CASANDRA | 0.24% | $ 333.68 | |
| 183 | MULLINS HICKLIN | ASHLEY | 0.17% | $ 244.21 | |
| 184 | MUNDAY | NICOLE | 0.22% | $ 302.37 | |
| 185 | MUSE | SIERRA | 0.00% | $ 25.00 | |
| 186 | MYERS | ERIN | 1.50% | $ 2,104.39 | |
| 187 | MYERS | KELSEY | 0.07% | $ 95.87 | |
| 188 | NELSON | DANIELLE | 0.24% | $ 333.46 | |
| 189 | NEWELL | MADELENE | 0.06% | $ 88.35 | |
| 190 | NEWMAN | ASHLEY | 0.08% | $ 115.91 | |
| 191 | NOWAKOWSKI | RAELYNN | 0.01% | $ 25.00 | |
| 192 | OLDHAM | ELIZABETH | 0.93% | $ 1,305.09 | |
| 193 | OLIVER (KARJANIS) | DESIREE` | 0.00% | $ 25.00 | |
| 194 | OLIVER | JAZMINE | 0.00% | $ 25.00 | |
| 195 | Olsen | Jenelle | 0.06% | $ 87.83 | $ 250.00 |
| 196 | ORR | STACEY | 0.47% | $ 661.80 | |
| 197 | PALESTINI | NIKKI | 0.00% | $ 25.00 | |
| 198 | PALMER | CHRISTEN | 0.22% | $ 312.63 | |
| 199 | PANDO | SONJA | 1.34% | $ 1,881.28 | |
| 200 | PARADISE | AMBER | 0.00% | $ 25.00 | |
| 201 | PARKER | ALEXANDRIA | 0.29% | $ 406.38 | |
| 202 | PAYNE | KE-AURY | 0.28% | $ 387.63 | |
| 203 | PENNINGTON-MUNOZ | BRITTANY | 1.42% | $ 1,992.15 | |
| 204 | PEREZ | SARAH | 0.00% | $ 25.00 | |
| 205 | PERKINS | ELANA | 0.00% | $ 25.00 | |
| 206 | PERRUCHON | LEAH | 0.38% | $ 530.38 | |
| 207 | PETERS | MARISSA | 0.90% | $ 1,264.57 | |
| 208 | PIZANO | DEANDRA | 0.17% | $ 243.77 | |
| 209 | POLLARD | KHRYSTAL | 0.12% | $ 164.58 | |
| 210 | PONTIUS | SEAN | 0.27% | $ 376.96 | |
| 211 | POSSEMATO | TOZHIA | 0.16% | $ 220.18 | |
| 212 | POTTS | FEATHER | 0.03% | $ 37.67 | |
| 213 | PRINCE | TRACI | 0.13% | $ 175.96 | |
| 214 | PRUSS (KOSCIELNY) | TONI | 0.10% | $ 138.07 | |
| 215 | QUISENBERRY (BROOK | JUDITH | 0.00% | $ 25.00 | |
| 216 | RED | KENYA | 0.00% | $ 25.00 | |
| 217 | RENAUD | BRIANNA | 0.16% | $ 230.69 | |
| 218 | REUST | WHITNEE | 0.15% | $ 207.35 | |
| 219 | RHOADES | DAVID | 0.37% | $ 525.77 | |
| 220 | RICHEY | EMILY | 0.08% | $ 114.55 | |

**Greenwell v. R Wings R Wild**
**Exhibit A**

| | Last Name | First Name | Pro Rata Factor | Settlement Award | Service Award |
|---|---|---|---|---|---|
| 221 | RIGDON | KASEY | 0.25% | $ 357.91 | |
| 222 | ROARK | MORGAN | 0.31% | $ 437.23 | |
| 223 | ROBINSON | DESMONE | 0.11% | $ 161.27 | |
| 224 | ROBINSON | SHALONDA | 3.16% | $ 4,446.56 | |
| 225 | ROGERS | WHITNEY | 0.44% | $ 617.90 | |
| 226 | ROMANELLO | GABRIELLE | 0.00% | $ 25.00 | |
| 227 | ROPER | LEAH | 0.46% | $ 640.58 | |
| 228 | ROY LEDET | STEPHANIE | 0.55% | $ 771.97 | |
| 229 | RUIZ | ASHLEY | 0.19% | $ 269.32 | |
| 230 | SALZIDO | ELIZABETH | 0.26% | $ 362.32 | |
| 231 | SANTA CRUZ | JESSICA | 0.56% | $ 786.61 | |
| 232 | SCHRAMM | SASHA | 0.02% | $ 32.96 | |
| 233 | SCHREIBER | JORDAN | 2.26% | $ 3,174.64 | $ 250.00 |
| 234 | SEWELL | JODI | 0.24% | $ 334.41 | |
| 235 | SHARP | KAYLA | 0.01% | $ 25.00 | |
| 236 | SHIPP | VANESSA N. | 0.88% | $ 1,232.70 | |
| 237 | SHIVERS | KATONYA | 0.18% | $ 247.41 | |
| 238 | SIEWERT | LILY | 0.26% | $ 362.05 | |
| 239 | SIMMONS | SHANNEN | 0.06% | $ 86.14 | |
| 240 | SIMPSON | MORGAN | 2.05% | $ 2,885.38 | |
| 241 | SMITH | JAMIE | 0.49% | $ 683.97 | |
| 242 | SMITH | KAYCE | 0.10% | $ 143.94 | |
| 243 | SMITH | KRISTYN | 0.08% | $ 117.48 | |
| 244 | SMITHEY (VISOR) | MARILYN | 0.20% | $ 282.38 | |
| 245 | SNEED | LAURA | 0.02% | $ 27.90 | |
| 246 | SPEARS | CAITLIN | 0.08% | $ 107.43 | |
| 247 | STALEY | ALLISON | 0.04% | $ 56.38 | |
| 248 | STAPLETON | SYDNEE | 0.46% | $ 647.66 | |
| 249 | STARKS | PRISCILLA | 0.00% | $ 25.00 | |
| 250 | STEIN | MOLLY | 0.27% | $ 385.95 | |
| 251 | STEVENS | SARA | 0.00% | $ 25.00 | |
| 252 | STILES | JENNIFER | 0.06% | $ 90.49 | |
| 253 | STOCK | TIFFANY | 0.06% | $ 83.60 | |
| 254 | STUCKEY | TAYLOR | 0.25% | $ 347.43 | |
| 255 | SUMLER | JAZMINE | 1.02% | $ 1,429.06 | |
| 256 | SUMMERS | HALLIE | 0.38% | $ 531.28 | |
| 257 | SWAFFORD | KRYSTAL | 0.62% | $ 875.20 | |
| 258 | TAPLEY II | STEVEN | 0.02% | $ 35.06 | |
| 259 | TATE | KRISTINA | 0.00% | $ 25.00 | |
| 260 | TAYLOR | CHRISTI | 2.19% | $ 3,081.58 | |
| 261 | TAYLOR STUBBLEFIELD | TRACY | 0.00% | $ 25.00 | |
| 262 | TERRELL | CHASE | 0.40% | $ 559.00 | |
| 263 | TERRELL | KYLIE | 0.16% | $ 219.06 | |
| 264 | TETTLETON | MEAGAN | 0.48% | $ 672.30 | |

**Greenwell v. R Wings R Wild**
**Exhibit A**

| | Last Name | First Name | Pro Rata Factor | Settlement Award | Service Award |
|---|---|---|---|---|---|
| 265 | THOMAS | AMBER | 0.09% | $ 125.18 | |
| 266 | THOMAS | SAVANNAH | 0.26% | $ 372.01 | |
| 267 | THOMAS | SHELBY | 0.00% | $ 25.00 | |
| 268 | THORNE | TORI | 0.90% | $ 1,262.72 | |
| 269 | TIFFIN | CHRISTINA | 0.12% | $ 169.74 | |
| 270 | TIGER | ROMAN | 0.04% | $ 50.22 | |
| 271 | TINNIN | RODNEY | 0.28% | $ 397.76 | |
| 272 | TORRENCE | CHRISTINA | 0.48% | $ 673.46 | |
| 273 | TRIPP | KENYA | 0.13% | $ 182.63 | |
| 274 | TRONEY | PAXTON | 0.22% | $ 312.20 | |
| 275 | TUZICKA | CAITLYN | 0.77% | $ 1,079.88 | |
| 276 | VAILES | CHEYANNE | 0.04% | $ 61.24 | |
| 277 | VAUGHAN | ASHLEY | 0.05% | $ 64.72 | |
| 278 | VERMILLIAN | KELSEY | 0.18% | $ 248.61 | |
| 279 | VIENS | MARCI | 0.92% | $ 1,288.44 | |
| 280 | VILLARREAL | AMBER | 0.00% | $ 25.00 | |
| 281 | VROOM | STEPHANIE | 0.04% | $ 58.71 | |
| 282 | WALL | KALEB | 0.08% | $ 109.76 | |
| 283 | WASHINGHTON | KRIS | 0.13% | $ 186.72 | |
| 284 | WASILESKI | NICOLE | 0.11% | $ 155.22 | |
| 285 | WHEELER | TREY | 0.33% | $ 456.70 | |
| 286 | WHITE | KARRE | 0.03% | $ 36.40 | |
| 287 | WHITE JR. | JOHN | 0.80% | $ 1,120.54 | |
| 288 | WILLEY | CAITLINE | 0.90% | $ 1,266.03 | |
| 289 | WILLIAMS | KAELYN | 0.35% | $ 494.04 | |
| 290 | WILLIAMS | MAKAILA | 0.07% | $ 96.26 | |
| 291 | WILLIAMS | TATYANA | 0.30% | $ 428.26 | |
| 292 | WILSON | TINA | 0.07% | $ 102.49 | |
| 293 | WOODS | HAYLEY | 0.06% | $ 85.03 | |
| 294 | WOODS | MEGAN | 0.42% | $ 591.68 | |
| 295 | WOOLSEY | RENE | 0.02% | $ 25.54 | |
| 296 | WRIGHT | ANGIE | 0.24% | $ 336.25 | |
| 297 | YARBROUGH | CANDACE | 0.20% | $ 276.64 | |
| 298 | YAZEL | KASSI | 0.06% | $ 83.33 | |
| 299 | YIM | SAMANTHA | 0.17% | $ 234.84 | |
| 300 | YOUNG | LATORIA | 0.04% | $ 55.63 | |
| 301 | YOUNG | REGENA | 0.14% | $ 200.73 | |
| 302 | Young | Tranae | 0.81% | $ 1,134.59 | $ 250.00 |
| 303 | ZARAGOZA | AUGUST | 0.25% | $ 346.90 | |

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| PAIGE GREENWELL and ZACHARY FLUKER, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) | |
| | ) | Case No. 4:15-cv-00742-DPM |
| Plaintiffs, | ) ) | |
| | ) | Judge Marshall |
| v. | ) ) | |
| R WINGS R WILD, LLC, CONWAY WILD WINGS, LLC, NORTH LITTLE ROCK WINGS, LLC, FORT SMITH FIERY HOT, LLC, JONESBORO WINGS, LLC, WINGIT, LLC, I-40 WINGS, LLC, EDMOND WINGS, LLC, RWINGS ROCK, LLC, TULSA WINGS, LLC, SHAWNEE WINGS, LLC, MIDDELWINGS, LLC, WILD WINGS WEST, L.L.C., OWASSO WINGS, LLC, YUKON WINGS, LLC, NORMAN WINGS, LLC, STILLWATER WINGS, LLC and JEROMY HOWARD, individually, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DECLARATION OF DOUGLAS M. WERMAN**

I, Douglas M. Werman, declare as follows:

      1.     I am a member in good standing of the Illinois State Bar and am the managing shareholder of Werman Salas P.C.  I submit this declaration in support of Plaintiffs' Unopposed Motion for Approval of Settlement, for Appointment of Settlement Administrator, and for Approval of Service Awards and Attorneys' Fees and Costs.

      2.     I have personal knowledge of the factual matters set forth in this declaration.

1

**My Experience**

3.     I graduated from Loyola University of Chicago's School of Law in 1990. I received my undergraduate degree from the University of Illinois, Champaign-Urbana, in 1987. I was admitted to practice law in the State of Illinois in 1990.  During the entire course of my legal practice, I have practiced primarily in the area of labor and employment law. Since 2001, my practice has been highly concentrated in representing employees in cases arising under federal and state wage and hour laws.

4.     I am admitted in the following courts:

| COURT OF ADMISSION | DATE OF ADMISSION |
|---|---|
| State of Illinois | 11/08/1990 |
| Northern District of Illinois | 12/20/1990 |
| Seventh Circuit Court of Appeals | 08/05/1994 |
| Western District of Michigan | 06/24/1999 |
| Central District of Illinois | 03/30/2001 |
| Eastern District of Michigan | 03/25/2003 |
| Southern District of Illinois | 04/08/2010 |
| Northern District of Indiana | 10/25/2010 |
| Second Circuit Court of Appeals | 11/21/2013 |
| Eleventh Circuit Court of Appeals | 05/06/2015 |
| Western District of New York | 07/22/2015 |
| Federal Claims Court | 08/13/2015 |
| Southern District of Indiana | 11/05/2015 |
| Eastern District of Arkansas | 12/04/2015 |
| Tenth Circuit Court of Appeals | 04/21/2016 |
| Ninth Circuit Court of Appeals | 05/20/2016 |
| District of Colorado | 06/06/2017 |

5.     My published cases in the area of wage and hour and employment law exceed 200 decisions, and include *Ervin v. OS Rest. Servs.*, 632 F.3d 971 (7th Cir. 2011), the leading appellate decision addressing the propriety of a combined Rule 23 class action and a FLSA collective action under 29 U.S.C. § 216(b).

6.     I was a co-author of the National Employment Lawyers Association ("NELA")

2

*amicus* brief filed in the case *Fast v. Applebee's Int'l, Inc.,* 638 F.3d 872 (8th Cir. 2011) *cert. denied* ___ U.S. ___, 181 L. Ed. 2d 977 (Jan. 17, 2012), which deals with Section 3(m) of the Fair Labor Standards Act, and what duties a tipped employee may lawfully perform while receiving a tip-credit wage rate. I was also a co-author of the NELA *amicus* brief filed in the case *Roach v. T.L. Cannon Corp.*, which resulted in the successful appeal and reversal of a district court's decision denying class certification on the grounds that individualized damages in a wage and hour class action defeated predominance under Fed. R. Civ. P. 23(b)(3). *Roach v. T.L. Cannon Corp.*, No. 13-3070-CV, 2015 WL 528125 (2d Cir. Feb. 10, 2015). The *Roach* decision is a leading appellate decision addressing the impact of the United States Supreme Court decision in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) on the predominance prong of Fed. R. Civ. P. 23(b)(3) in wage and hour class actions.

7.      I am a frequent speaker and author on wage and hour matters. Some examples of my speaking engagements are:

| | |
|---|---|
| Chicago Bar Association, Labor and Employment Committee, 2017 | Settlement Strategies in Wage and Hour Class and Collective Actions |
| National Employment Lawyers Association National Convention, Los Angeles, 2016 | Co-Counseling & Cooperating with Other Plaintiffs' Lawyers |
| National Employment Lawyers Association National Convention, Los Angeles, 2016 | Who is an Employer & Who is an Employee? |
| Federal Bar Association, Chicago Chapter, Moderator, 2016 | Enforcement and Litigation Priorities: EEOC, NLRB, DOL |
| National Employment Lawyers Association National Convention, Washington, D.C., 2015 | Settlement Issues in Settling Wage and Hour Class and Collective Actions |
| American Bar Association, Fair Labor Standards Legislation Committee, Puerto Vallarta, Mexico 2015 | Litigation Issues in Wage and Hour Class and Collective Actions |
| Bridgeport Legal Conferences, Wage and Hour Class Action, Chicago, 2015 | Settlement of Wage and Hour Class Actions |
| Practicing Law Institute, Chicago, 2013, 2014, 2015 | FLSA Wage and Hour Update |

| Chicago Bar Association, Class Litigation Committee, 2011 | Current Terrain in Class Action Litigation |
| Illinois Institute of Continuing Legal Education, 2008 | Litigating Class Action Claims |
| AFL-CIO Lawyers Coordinating Committee, 2008 | Arbitrating Wage and Hour Cases |

8.      I am a member of the Board of Editors of the leading treatise on the Fair Labor Standards Act, entitled, "Kearns, *The Fair Labor Standards Act*," published by Bloomberg BNA in conjunction with the American Bar Association Section of Labor and Employment Law. Before being elevated to the Board of Editors in 2016, I was the Senior Chapter Editor of Chapter 20 ("Hybrid" FLSA/State Law Actions") of that same treatise.

9.      In 2012, I was a recipient of the Thirteenth Annual Award for Excellence in Pro Bono Service awarded by the United States District Court for the Northern District of Illinois, in conjunction with the Chicago Chapter of the Federal Bar Association.

10.      I have been lead counsel in nearly seven hundred (700) cases filed in the state and federal courts relating to the recovery of unpaid wages. The majority of these cases proceeded as collective actions under § 216(b) of the FLSA and/or set forth class action claims under Fed. R. Civ. P. 23.  These cases, include: *Ortiz v. Manpower*, Inc., No. 12 C 5248 (N.D. Ill. August 21, 2012) (class comprising over 85,000 employees); *Arrez v. Kelly Services, Inc.,* No. 07 C 1289 (N.D. Ill.) (class action for unpaid wages for over 95,000 employees) and *Polk v. Adecco*, No. 06 CH 13405 (Cook County, Il.)(class action for owed pay for over 36,000 employees); *Romo v. Manpower,* No. 09 C 3429 (N.D. Ill. January 18, 2012); *Robbins v. Blazin Wings, Inc.,* No. 15-CV-6340 CJS, 2016 WL 1068201, at *1 (W.D.N.Y. Mar. 18, 2016)(step one FLSA certification of a collective of 62,000 tipped employees); *Garcia v. JC Penney Corp., Inc.*, No. 12-CV-3687, 2016 WL 878203 (N.D. Ill. Mar. 8, 2016) (class action for owed pay for over 36,000 employees); *Haschak v. Fox & Hound Rest. Grp.,* No. 10 C 8023, 2012 U.S. Dist. 162476, at * 2

4

(N.D. Ill. Nov. 14, 2012); *Schaefer v. Walker Bros. Enters., Inc.,* No. 10 C 6366, 2012 U.S. Dist. LEXIS 65432, at *4 (N.D. Ill. May 7, 2012); *Kernats v. Comcast Corp. Inc.,* Nos. 09 C 3368 and 09 C 4305, 2010 U.S. Dist. LEXIS 112071 (N.D. Ill. Oct. 20, 2010); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 311 (N.D. Ill. 2010) & *Driver,* No. 06 C 6149, 2012 U.S. Dist. LEXIS 27659, at *15 (N.D. Ill. Mar. 2, 2012) (19,000 tipped employees, decertification denied); *Schmidt v. Smith & Wollensky,* 268 F.R.D. 323 (N.D. Ill. 2010); *Hardaway v. Employbridge of Dallas, et al*., No. 11 C 3200 (N.D. Ill.); *Williams v. Volt*, No. 10 C 3927 (N.D. Ill.)(IWPCA class action for owed pay for over 15,000 employees); *Rosales v. Randstad*, No. 09 C 1706 (N.D. Ill.); *Rusin v. Chicago Tribune,* No. 12 C 1135 (N.D. Ill. February 5, 2013); and *Peraza v. Dominick's Finer Foods, LLC,* No. 11 C 8390 (N.D. Ill. November 20, 2012).

**The Litigation**

11.     On December 4, 2015, Plaintiffs filed this Action in the United States District Court for the Eastern District of Arkansas, on behalf of themselves and others similarly situated, alleging that Defendants violated the Fair Labor Standards Act ("FLSA"). 29 U.S.C. 201, *et seq.* and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201 *et seq.* Plaintiffs alleged that Defendants failed to pay their servers and bartenders in accordance with the tip-credit provisions of the FLSA by requiring servers and bartenders to: (1) perform improper types, and excessive amounts, of non-tipped work; and (2) reimburse Defendants from their tips for customer walkouts and cash drawer shortages, while those employees were paid sub-minimum, tip-credit wages. On January 13, 2016, Defendants filed their Original Answer and Defenses to the complaint. On February 3, 2016, Plaintiffs filed their First Amended Complaint, and on February 17, 2017, Defendants filed their Answer and Defenses to the First Amended Complaint. On July 25, 2016, Plaintiffs filed an unopposed motion to file a Second Amended

5

Complaint to add additional companies under which Defendant Howard's restaurants operate. ECF 48.  On July 26, 2016, the Court granted Plaintiffs' unopposed motion, and on July 29, 2016, Plaintiffs filed their Second Amended Complaint. ECF 49, 50. On August 12, 2016, Defendants filed their Answers and Defenses to Plaintiffs' Second Amended Complaint. ECF 52.

12.      It is an understatement that the Parties litigated this case extensively.  Some of the motion practice, discovery, and settlement history is detailed below.

**Motion Practice**

13.      On May 23, 2016, Plaintiffs filed a Motion for Step-One Notice Pursuant to the Fair Labor Standards Act for an order authorizing notice of this collective action to be sent to servers and bartenders who worked at Defendants' Buffalo Wild Wing restaurants during the three years prior to the filing of the complaint. ECF No. 36. On June 10, 2016, Defendants filed their response to Plaintiffs' Motion, opposing Plaintiffs' request to include bartenders in the putative class of Step-One notice recipients. ECF No. 42. On June 16, 2016, Plaintiffs filed their reply in further support of their motion for Step-One Notice. ECF No. 45.  On July 7, 2016, the Court issued an Order mostly granting and partly denying Plaintiffs' Motion for Step-One Notice. ECF 47. The deadline for potential collective action members to opt-in to this lawsuit was September 15, 2016. ECF 47, at 4. As of the opt-in deadline, 304 persons filed consents to join the lawsuit with the Court. ECF 65.[1]

14.      On January 23, 2017, Plaintiffs filed a Motion to Strike or Exclude Report and Testimony of Patricia Slate. ECF 77. On February 6, 2017, Defendants filed their Response to Plaintiffs' Motion to Strike or Exclude Testimony of Patricia Slate. ECF 84. On March 28, 2017, the Court issued an order granting Plaintiffs' Motion to Strike Slate's Testimony. ECF 98.  On

---

[1]      1 Opt-In Plaintiff later withdrew his consent form.

6

June 23, 2017, Defendants filed a Motion to Clarify or Reconsider Order Excluding Patricia

Slate's Testimony, Or, in the alternative, Motion for Leave to Amend Slate's Expert Report, or

in the Alternative, Motion to Certify for Interlocutory Appeal. ECF 113. On June 29, 2017,

Plaintiffs filed their response to the motion, and on July 6, 2017, Defendants filed their reply.

ECF 114, 115.  On August 9, 2017, the Court entered an order party granting and mostly denying

Defendants' motion. ECF 121. On August 23, 2017, Plaintiffs filed a Motion to Reconsider the

Court's August 9, 2017 order regarding Patricia Slate's testimony. ECF 125. On September 6,

2017, Defendants filed their response and on September 8, 2017, the Court denied Plaintiffs'

Motion to Reconsider the Court's August 9, 2017 order. ECF 128, 130.

15.     On October 18, 2017, Defendants served a Second Amended Report from Patricia

Slate. ECF 131. On October 23, 2017, Plaintiffs filed a Motion to Strike Defendants' Second

Amended Report from Patricia Slate. ECF 131. On November 6, 2017, Defendants filed their

response and on November 7, 2017, Plaintiffs filed their reply. ECF 133, 134. On December 13,

2017, the Court granted Plaintiffs' Motion to Strike Defendants' Second Amended Report from

Patricia Slate. ECF 141.

16.     On May 9, 2017, Plaintiffs filed a Motion to Exclude Certain Testimony of Dr.

Michael Campion. ECF 104. On May 23, 2017, Defendants filed their response and on May 30,

2017, Plaintiffs filed their reply in further support of their motion. ECF 107, 108. On May 5,

2017, the Court denied Plaintiffs' motion. ECF 109.

17.     On December 15, 2017, Plaintiffs filed extensive briefs and exhibits, totaling over

1,000 pages, in support of their Motion for Summary Judgment on Defendant Jeromy Howard's

Status as an "Employer" and Motion for Final Certification of Collective and Class Claims. ECF

142, 146.

7

**Discovery Proceedings**

18.     On June 21, 2016, Plaintiffs served written discovery requests on Defendants, including Plaintiffs' First Set of Requests to Admit, First Requests for Production of Documents, and First Set of Interrogatories, and on July 25, 2016 Defendants served answers to these discovery requests and produced responsive documents.  Also on June 21, 2016, Defendants served Requests for Production, Interrogatories and Requests for Admission on each of the two named plaintiffs and six opt-in plaintiffs, and on July 25, 2016, the two named plaintiffs and six opt-in plaintiffs served written discovery responses and produced responsive documents.

19.     On December 22, 2016, Defendants served Requests for Production, Requests for Admission and Interrogatories on fourteen (14) collective action members. ECF 79. On that same day, Defense counsel sent a list of twenty-one (21) Plaintiffs who Defendants wanted to depose.  ECF 83 at 10.   Also on December 22, 2016, Defendants served their Expert Witness Disclosure, listing three retained expert witnesses and one non-retained expert witness.

20.     On January 9, 2017, Plaintiffs filed a motion for leave to disclose a rebuttal expert. ECF 69.  On January 13, 2017, the court granted Plaintiffs' motion for leave to disclose a rebuttal expert. ECF 73.  On January 23, 2017, Plaintiffs served their Rebuttal Expert Witness Disclosure.

21.     On January 9, 2017, Defendants served Amended Fed. R. Civ. P. 26(a)(1) Disclosures which identified five hundred and seventy-four (574) fact witnesses, the current and former managers of the seventeen restaurants at issue in this lawsuit during the relevant time period. ECF 79.  On January 12, 2017, Plaintiffs filed a Motion to Exclude Late Disclosed Witnesses, asking the Court to exclude Defendants from using or relying upon any of the 574 witnesses.  ECF 70. On January 13, 2017, the Court denied without prejudice Plaintiffs' motion

to exclude late disclosed witnesses, instructing the parties to follow the discovery dispute protocol set forth in Local Rule 7.2. ECF 72.  On January 27, 2017, the Parties filed a Joint Report of Discovery Disputes Regarding Defendants' Amended Disclosures and Depositions of Plaintiffs and Opt-In Plaintiffs. ECF 83.  On February 10, 2017, the Court held a status conference and resolved the dispute regarding Defendants' Amended Disclosures and Depositions of Plaintiffs and Opt-In Plaintiffs. ECF 89.

22.      On January 16, 2017, the Parties filed a Joint Report of Discovery Dispute regarding Plaintiffs' discovery request for data showing the time elapsed between when Plaintiffs clocked in for each shift and when Plaintiffs received his or her first customer, and parallel information for shift ends. ECF 74. On January 20, 2017, the parties filed a Supplemental Report of Discovery Dispute regarding Time Lapse Data. ECF 76.  On February 28, 2017, the parties filed Joint Status Report on their efforts to obtain time lapse data from Defendants' Aloha point-of-sale system. ECF 93. On March 14 and April 3, 2017, the parties filed further Joint Status Report on their efforts to obtain time lapse data. ECF 96, 102. Plaintiffs indicated that they might take additional discovery, including third party discovery, relating to the Defendants' efforts and representations in Defendants' declarations, which on April 12, 2017, the Court approved. ECF 103.

23.      On August 2, 2017, the parties filed a Joint Report of Discovery Dispute regarding disclosure of Defendants' expert Dr. Michael Campion's communications about employee surveys regarding the amount and type of nontipped work. ECF 119.  On September 6, 2017, the Court directed Defendants to produce certain documents previously withheld. ECF 129, 137.

24.      Defendants produced time and payroll records for all servers and bartenders who

9

were employed by Defendants during the class period. Plaintiffs' counsel analyzed the data and used it to calculate the amount of minimum wages owed to Plaintiffs and all Opt-In Plaintiffs.  In the course of discovery, Defendants produced over 80,000 electronic bates labeled documents and Plaintiffs produced over 700 pages of electronic bates labeled documents.

25.     Defendants took 16 depositions of Plaintiffs, including the two Named Plaintiffs. Plaintiffs took 9 depositions, including a comprehensive Rule 30(b)(6) deposition of Defendants and the deposition of Defendants' expert, Dr. Michael Campion.

**Settlement History**

26.     During the entire litigation, the Parties discussed the potential for settlement, but made little progress on their own. On September 14, 2017, near the end of discovery, the Parties attended an in-person mediation in Dallas, Texas facilitated by Bill Lemons, a mediator experienced in resolving complex wage and hour cases. After nearly a full-day mediation, the case did not resolve. The Parties thereafter continued to litigate the case, including Plaintiff taking the deposition of Defendants' expert Dr. Michael Campion in October and further motion practice with regard to Defendants' expert Patricia Slate. But the parties continued to discuss the possibility of settlement, both directly and with the assistance of mediator Lemons. On December 14, 2018, Mr. Lemons, with the consent of the Parties, made a mediator's proposal that he felt was a fair and reasonable resolution of the Action and gave Plaintiffs and Defendants until 3:30 p.m. the following day, December 15, 2018, to accept or reject his proposal. After consideration, both Parties accepted the mediator's proposal and settlement was reached, subject to Court approval.

27.     The Settlement Payments range from a minimum payment of $25.00 to a maximum payment of $5,344.29, and the average Settlement Payment is $467.45. These

payments from the Net Settlement Fund represent a 25% forfeiture of the tip credit for *every* week that Opt-in Plaintiffs worked for Defendants. Inasmuch as Plaintiffs alleged that they spent 35%-40% of their time performing dual jobs, and inasmuch as Defendants alleged Plaintiffs could only recover on their walk-out claims for the individual work weeks that they suffered such a charge-back, this is an outstanding result and more than fair and reasonable.

28.     The Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. As explained above, discovery in this case has been extensive and Defendants provided time and payroll data for Opt-In Plaintiffs. Only with the assistance of the mediator over several months and the provision of a final mediator's proposal were the Parties able to resolve this dispute.  For these reasons, the Court should conclude that the proposed Settlement is the product of contested litigation.

**Plaintiffs' Attorneys and Named Plaintiff Support the Settlement**

29.     Plaintiffs' Counsel has gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. Based on Plaintiffs' Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective actions, Plaintiffs' Counsel believe the Settlement is fair and reasonable.

30.     The Named Plaintiffs support the settlement and no Opt-In Plaintiff has raised an objection or concern regarding the settlement or their individual payment amounts.

**The Named Plaintiffs and Other Opt-In Plaintiffs Were Critical to the Resolution of the Claims and Are Entitled to Service Awards**

31.     The Joint Stipulation contemplates providing Service Awards to Named Plaintiffs Paige Greenwell and Zachary Fluker in the amount of $7,5000.00 each, $250.00 to each Opt-In Plaintiff who gave a deposition, to acknowledge their time and effort expended in helping to achieve a successful Settlement. This payment is in addition to any payment they receive as their *pro rata* share of the Net Settlement Fund.

32.     The Named Plaintiffs have been an especially reliable and diligent representatives of the collective.  The role of the Named Plaintiffs in this litigation was crucial. They initiated the lawsuit, reviewed and approved the Complaint, conferred and corresponded with Class Counsel on a regular basis. They gave deposition testimony and participated in the unsuccessful September mediation. Plaintiff Greenwell traveled from Chicago to Little Rock for her deposition. Similarly, the Opt-In Plaintiffs who spent a significant time preparing for and giving deposition testimony are deserving of Service Awards. The Named Plaintiffs participated in the September, 2017 mediation by telephone and were fully informed as negotiations continued, and they approve the terms of the Settlement.

33.     As such, the requested service awards are well-deserved and should be approved.

34.     The requested Service Awards in the amount of $18,500 represents 3% of the Settlement Fund which is a reasonable percentage.

**My Firm's Lodestar in this Litigation**

**Timekeeping Records**

35.     Each attorney and member of Werman Salas' professional staff kept records of the time they worked on this litigation through a software program — commonly known as "Sage Timeslips 2017" — that is loaded onto Werman Salas P.C.'s network server. The

Timeslips file created for the instant litigation is named "Greenwell, Paige." Beginning with my initial consultation with Plaintiffs, whenever I or other members of Werman Salas P.C. performed work on behalf of Plaintiffs in connection with this litigation, time entries were made in the Timeslip program. These entries consist of a description of the work performed on the date of the entry and the amount of time spent during the day performing the work described.

### Amount of Reasonable Time Billed

36.     As of January 19, 2018, the reasonably incurred billable time Werman Salas incurred in litigating this class and collective action, and the reasonable rates for that work, are as follows:

| Timekeeper | Rate | Time | Amt. Due |
|---|---|---|---|
| **Werman Salas P.C.** | | | |
| Douglas M. Werman | $650.00 | 410.5 | $266,825.00 |
| Steven Schneck | $625.00 | 514.1 | $321,313.00 |
| Abra Siegel | $575.00 | 341.7 | $196,478.00 |
| Maureen A. Salas | $525.00 | 43.7 | $22,943.00 |
| Zachary C. Floweree | $430.00 | 318.9 | $137,127.00 |
| Sarah J. Arendt | $400.00 | 140.5 | $56,200.00 |
| Jacqueline Villanueva | $150.00 | 118.8 | $17,820.00 |
| Adriana Rodriguez | $150.00 | 132.35 | $19,853.00 |
| Cristina Calderon | $150.00 | 219.6 | $32,940.00 |
| Maria Reyes | $150.00 | 131.53 | $19,730.00 |
| Carla Villanueva | $150.00 | 150 | $22,500.00 |
| **Total** | | **2,521.6** | **$1,113,727.00** |

37.     Plaintiffs' Counsel is not seeking their full lodestar, but instead an attorney's fees of $274,606.81 – or only 23% of their actual lodestar of $1,184,075.00. Based on the number of hours Plaintiffs' Counsel has incurred in the Action – a total of 2,844.23 – this is a blended hourly rate of $96.55. In addition, the request attorney's fee does not take into consideration future time Plaintiffs' Counsel will spend fulfilling their obligations in the Settlement Agreement, conferring with the Settlement Administrator, monitoring the administration of the

13

Settlement, and responding to Plaintiffs' and Settlement Class members' inquiries. Plaintiffs'

Counsel expects these future attorneys' fees to be substantial.

38.     All members of Werman Salas attempted to avoid duplicative work and the billed

time reflects a reasonable amount of time for each performed task. Class Counsel exercised

prudent billing judgment in delegating the work among attorneys. Attorneys Douglas M.

Werman, Zachary Flowerree, and Steven Schneck performed the majority of work in the case,

reducing inefficiencies that could arise if multiple attorneys were staffed on the case. In addition,

more than one-third of all hours performed represents work that had been delegated to

paralegals.

### Reasonable Hourly Billing Rates

39.     In addition to the contingent fee work I perform in class and collective actions, I

also have hourly paying clients.

40.     I charge the hourly rate of $650/hr for my work as a mediator. I most recently

charged that hourly rate for a worker's compensation retaliatory discharge case I mediated on

July 21, 2017.  I also charge a flat rate of $12,000.00 per day for my mediation services of wage

and hour class and collective actions. The flat rate includes preparatory time and time spent in a

full day of mediation. The flat rate results in an effective hourly rate in excess of $650 per hour.

41.     I also charge the hourly rate of $650/hr for work I perform as an arbitrator of

wage and hour cases before the American Arbitration Association.

42.     I have been awarded the hourly rate of $650/hr by numerous federal and state

courts. For example, in granting a petition for an award of attorney's fees, I was recently

awarded the hourly rate of $650.00 per hour in *Knox v. Jones Grp.,* No. 15-CV-1738 SEB-TAB,

2017 WL 3834929, at *5 (S.D. Ind. Aug. 31, 2017) and *Sanchez v. Roka Akor Chicago LLC*, No.

14

14 C 4645, 2017 WL 1425837, at *5-7 (N.D. Ill., Apr. 20, 2017); *Williams v. Neil's Foods, Inc*.,

No. 13-2108 (ECF No. 25, 12/19/13) (N.D. Ill.) (awarding Douglas Werman $650/hr);

*Martignago et al. v. Merrill Lynch & Co., Inc.*, et al., Case No. 11-cv-03923-PGG (ECF No. 90,

10/3/13) (S.D.N.Y) (awarding Werman Salas and co-counsel 25% percent of a $12,000,000

common fund following a loadstar crosscheck using an hourly rate of $650.00); see also *Mouloki*

*v. Epee,* No. 14 C 5532, 2017 WL 2791215, at * 3, n. 4, (N.D. Ill. June 27, 2017).

43.     Based on the rates awarded by these courts in other wage and hour cases,

Plaintiffs believe the rates requested by Douglas Werman and other Werman Salas lawyers and

administrative staff are within the prevailing market rates in their community. In addition, the

hourly rates sought by Maureen Salas and other Werman Salas lawyers and administrative staff

are also those either actually charged to hourly paying clients or are well within the market rates

for lawyers of their educational background and experience.

**The Requested Fee Represents a Reduction of Plaintiffs' Counsel's Lodestar**

44.     The amount Plaintiffs' Counsel seeks in attorneys' fees does not take into

consideration the time Plaintiffs' Counsel will spend fulfilling their obligations in the Settlement

Agreement, conferring with the Settlement Administrator, monitoring the administration of the

Settlement, and responding to settlement inquiries.

**Plaintiffs' Counsel's Litigation Expenses**

45.     My firm has incurred $48,349.20 in reasonably incurred litigation costs. These

costs are set forth in Exhibit A, hereto. These costs include, but not limited to $8,753.90 to mail

the FLSA opt-in notice, $10,000.00 for Plaintiff's rebuttal expert, $15,092.50 in deposition

transcripts, $4,219 to the private mediator William Lemons, $1,000 in filing and pro hac

admission fees, and more than $7,500 in other deposition, travel related expenses. All these costs

15

were reasonably and necessarily incurred as a result of the way the case was defended and to put

the case in a posture for a successful trial or settlement.

46.     I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is

true and correct.


 Executed this February 2, 2018,
 Chicago, Illinois.

_____
Douglas M. Werman

Douglas M. Werman
Werman Salas P.C.
77 West Washington Street, Ste. 1402
Chicago, Illinois  60602
(312) 419-1008
dwerman@flsalaw.com


16

# EXHIBIT A

Werman Salas P.C.
77 W. Washington, Suite 1402
Chicago, IL 60602
FEIN #20-3042887

Invoice submitted to:
Paige Greenwell

February 02, 2018

Invoice #11174

Additional Charges :

| | | Amount |
|---|---|---|
| 11/23/2015 | Legal Research on potential Defendants in Greenwell litigation --Westlaw | 37.56 |
| 11/25/2015 | Fee for Certificates of Good Standing for ED ARk admission- Ill. Supreme Court | 2.00 |
| | FedEx to Clerk of Illinois Supreme Court for Certs of Good Standing | 17.13 |
| 12/2/2015 | FedEx to Werman Salas from Illinois Supreme Court re Certs of Good Standing | 24.90 |
| 12/3/2015 | Cost of Certificates of good standing from Ill. Supreme Court for Werman and Flowerree | 36.00 |
| | Filing Fee for Greenwell Complaint | 400.00 |
| | Admission fee for Werman and Florwerree | 400.00 |
| | Postage to E.D. Ark | 2.30 |
| | FedEx from Werman Salas to ED of Ark with pleadings | 50.76 |
| | Westlaw - Research potential Ark state law claims | 36.00 |
| 12/9/2015 | Service of Summons Fee | 75.00 |
| | Postage | 2.42 |
| 12/23/2015 | Legal Research--Westlaw | 68.37 |
| 1/22/2016 | Legal Research--Westlaw | 21.12 |
| 2/4/2016 | Postage | 1.42 |

Paige Greenwell

Page    2

| | | Amount |
|---|---|---|
| 2/11/2016 | Legal Research--Westlaw | 11.60 |
| 2/16/2016 | FedEx to US District Court-ED of Arkansas, Clerk of the Court Inv. # 5-315-69738 | 80.10 |
| 2/25/2016 | FedEx to Jay Wallace (02.10.16) - opposing counsel | 49.11 |
| 2/29/2016 | Accurint and resarch regarding potential similarly situated tipped employees employed by Defendants | 560.33 |
| 3/23/2016 | Postage | 1.42 |
| 3/31/2016 | Postage | 1.42 |
| 4/4/2016 | Legal Research--Westlaw | 17.86 |
| 5/16/2016 | Legal Research--Westlaw | 10.85 |
| 6/7/2016 | Legal Research--Westlaw | 33.59 |
| 6/21/2016 | Postage | 4.82 |
| 7/14/2016 | FedEx to opposing counsel | 38.55 |
| | Legal Research--Westlaw | 27.50 |
| 7/26/2016 | Postage | 1.47 |
| 8/2/2016 | Postage | 2.41 |
| 8/22/2016 | FedEx to Clerk of Court. 07.29.16. | 20.38 |
| 10/27/2016 | Service Fee from Dahl Administration. | 8,753.90 |
| 12/27/2016 | Legal Research--Westlaw | 256.16 |
| 1/3/2017 | Legal Research--Westlaw | 336.77 |
| 1/12/2017 | Postage | 0.47 |
| 1/16/2017 | FedEx to Anand Subramanian (01.03.17) | 25.75 |
| | FedEx to R. Heath Cheek (12.29.16) | 35.16 |
| | FedEx to Morgan Simpson. | 42.96 |
| | FedEx to Brittany Munoz Pennington. | 37.30 |
| 1/19/2017 | FedEx to Kayalan Pinson | 40.58 |

Paige Greenwell                                                                                   Page    3

                                                                                              Amount

| Date | Description | Amount |
|---|---|---|
| 1/20/2017 | Photocopying exhibits for depositions and depo prep materials | 13.21 |
| | FedEx to Jamie Michelle Besabe. | 40.58 |
| 1/24/2017 | FedEx to Amber Jackson. | 55.07 |
| 1/31/2017 | FedEx sent to Jamie Michelle Besabe. | 40.58 |
| | FedEx sent to Dusty Dilbeck. | 40.58 |
| | FedEx sent to Brittany Munoz-Pennington. | 38.65 |
| 2/1/2017 | FedEx sent to Durquisha Lasker. | 38.65 |
| | FedEx sent to Kayalan Finson. | 40.58 |
| 2/6/2017 | FedEx sent to Jamie Michelle Besabe. | 40.58 |
| | FedEx sent to Brittany Munoz-Pennington. | 38.65 |
| | FedEx sent to Kayalan Finson. | 40.58 |
| 2/7/2017 | Legal Research--Westlaw | 140.29 |
| | FedEx sent to Durquisha Lasker. | 38.65 |
| 2/10/2017 | Service Fee from JFAssociates for expert report. | 10,000.00 |
| | Airfare to Court Hearing - Chicago to  Little Rock | 448.40 |
| 2/28/2017 | Travel expenses for hearing in ARK, and depo related expenses (Tolls, Parking, Meals, Gasoline, Cab/Uber) | 214.96 |
| 3/6/2017 | Legal Research--Westlaw | 60.81 |
| 3/24/2017 | Paige Greenwell airfare from Chicago to Little Rock for her deposition | 540.40 |
| 4/14/2017 | Lunch for deposition prep. of Paige | 41.65 |
| 5/3/2017 | Legal Research--Westlaw | 133.59 |
| 5/11/2017 | FedEx to Clerk of the Court. | 18.82 |
| 6/5/2017 | Legal Research--Westlaw | 109.83 |
| 6/6/2017 | Pro Hac Vice Fees for Steve Schneck and Sarah Arendt . | 200.00 |
| 6/8/2017 | Postage | 1.89 |
| 6/9/2017 | Oklahoma City Depositions. Renaissance Oklahoma City Convention Center Hotel. | 308.60 |

Paige Greenwell                                                                    Page    4

|  |  | Amount |
|---|---|---|
| 6/9/2017 | Oklahoma City Depositions. Airline ticket one way to OK. | 102.20 |
|  | Oklahoma City Depositions. Airline ticket one way from OK. | 137.20 |
| 7/5/2017 | Legal Research--Westlaw | 146.99 |
| 7/18/2017 | Veritext Legal Solutions-<br>From May 9,10,15,16,18 (transcripts for Finson, Manuel, Hining, Moore, Schreiber, Olsen, Casteneda, Dilbeck, Mogollon) | 4,940.92 |
|  | Hi-Tech Contractor Fee to Enter Defendants .pdf data into Excel - June 17th | 594.00 |
| 7/25/2017 | Transcript Cost for Durquisha Lasker, Amber Jackson and Paige Greenwell. | 647.25 |
| 7/26/2017 | Transcript Cost - Jeromy Howard | 2,218.89 |
|  | Transcript Cost - Tarin Sinnes and Josh Goodyear. | 1,527.10 |
| 8/7/2017 | Lunch for Steve, deposition travel for Jeremey Howard, Tarin Sinnes and Josh Goodyear | 11.32 |
|  | Checked bags for round trip. Depositions of Jeremy Howard, Tarin Sinnes and Josh Goodyear. | 120.00 |
|  | Lyft ride from home to O'hare Airport.<br>$5.00 tip included<br>Deposition of Jeremy Howard, Tarin Sinnes and Josh Goodyear | 25.48 |
|  | Lyft from Oklahoma airport to hotel.<br>Deposition of Jeremy Howard, Tarin Sinnes and Josh Goodyear<br>$5.00 tip included | 17.47 |
|  | Additional hotel expenses includes food-26.44<br>and $4 cash tip for complimentary breakfast- no receipt for $4 cash tip. | 30.44 |
|  | Deposition of Jeremy Howard, Tarin Sinnes and Josh Goodyear<br>- Dinner at Hotel for Steven S. | 21.34 |
|  | Lyft from Hotel to Oklahoma airport.<br>Depositions of Jeremy Howard, Tarin Sinnes, and Josh Goodyear. | 18.39 |
|  | Depositions of Jeremy Howard, Tarin Sinnes, and Josh Goodyear.<br>-Lyft ride from Ohare airport to Home. | 27.29 |
|  | Depositions of Jeremy Howard, Tarin Sinnes, and Josh Goodyear.<br>Dinner-Partial-Steven Schneck did not supply a receipt.<br>MR | 6.00 |
| 8/17/2017 | Legal Research--Westlaw | 44.03 |
| 8/22/2017 | Ubers ($9.55 and $3.00), Food $16.53 (09.13.17) all related to Dallas trip | 29.08 |

Paige Greenwell                                                              Page    5

|            |                                                                                                                                                              | Amount   |
|------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------|----------|
| 8/22/2017  | Mediation Fee - William Lemons                                                                                                                                | 4,219.00 |
| 8/31/2017  | Costs associated with depositions of Ryan Hartman and Omar Galban in Oklahoma. (Tolls $4.50, Food $135.50, Airfare $392.40, Hotel $361.86, Cabs $49.79, Rental Car $165.37) | 1,109.42 |
|            | Costs associated with depositions of Brett Robinson and Morgan Taylor in Arkansas. (Food $33.33, Airfare $605.00, Hotel $109.62, Cabs $99.07)                 | 847.02   |
| 9/6/2017   | Legal Research--Westlaw                                                                                                                                       | 87.63    |
| 9/8/2017   | Legal Research--Westlaw                                                                                                                                       | 0.62     |
| 9/12/2017  | Deposition Costs for appearance fee of reporter at deps of Brett Robinson and Morgan Taylor. (Job Date 08/16/17, Bushman Court Reporting, Little Rock, AR)     | 130.00   |
| 9/13/2017  | Lyft. Airport to Hotel.                                                                                                                                       | 31.46    |
| 9/14/2017  | Lyft. Hotel to Mediation.                                                                                                                                     | 6.42     |
|            | Lyft from mediation to airport.                                                                                                                               | 28.57    |
| 9/19/2017  | Travel to Mediation (Sept. 13-14):  Airfare ($109.20, $31.78), Hotel ($305.33), and Food ($29.46).                                                            | 475.77   |
| 9/21/2017  | Postage for 5 opt-ins that we have no contact with via phone and email. One opt-in got 2 letters since we had two addresses.                                   | 2.94     |
| 9/27/2017  | Deposition Costs, Appearance and Non Transcription. Ryan Hartman and Omar Galban (Professional Reporters, Job date 08.23.17)                                    | 1,174.45 |
|            | Deposition Costs, Appearance and Non Transcription.  Melanie Golder (Professional Reporters, Job date 08.24.17)                                                 | 627.05   |
| 10/18/2017 | Airfare for travel to Boston for Patricia Slate dep (dep cancelled ticket non refundable).                                                                     | 121.20   |
| 10/20/2017 | Legal Research--Westlaw                                                                                                                                       | 47.32    |
| 10/25/2017 | Copying cost- Deposition Exhibits and Deposition prep. Exhibits PX167-190                                                                                      | 84.40    |
| 11/1/2017  | Travel Costs to Deposition of Michael Campion in Lafayette, IN October 25-26, 2017. (Tolls $8.22, Hotel $245.22, Parking $8 and $13.00, Mileage there $70.09, Mileage Back $71.69, Lunch $14.66) | 430.88   |
| 11/13/2017 | Transcript for Michael Campion, Ph.D. (Job Date 10.26.17, Connor Reporting).                                                                                   | 1,947.80 |
|            | Print condensed transcript for SS review.                                                                                                                     | 8.30     |
| 11/27/2017 | Transcript Cost for deposition of Melanie Golder. Job Date 08.24.17, Professional Reporters.                                                                    | 662.36   |

Paige Greenwell                                                                      Page      6

                                                                                           Amount

11/27/2017  Transcript Cost for deposition of Ryan Hartman and Omar Galban. Job Date 08.23.17,         1,216.88
            Professional Reporters.

12/5/2017   Legal research re Final FLSA Cert and Rule 23 cert motion                            41.65

12/8/2017   Legal Research for Class Cert motion                                                 17.17

12/10/2017  Legal Research re Ark admin regulations on dual jobs                                 13.21

12/12/2017  Legal Research for final certification and Rule 23 cert motion                       28.20

12/21/2018  FedEx class certification and Rule 23 cert motion to Judge Marshall.                 73.05

            Total costs                                                                    $48,349.20

            Balance due                                                                    $48,349.20

# EXHIBIT 3

## DECLARATION OF JOSH SANFORD

1.      My name is Josh Sanford, and I am over the age of eighteen (18) and duly qualified to execute this declaration.

### I. QUALIFICATIONS OF COUNSEL

A.      Attorney Josh Sanford

2.      I am an attorney licensed in the State of Arkansas.  I practice law with the law firm of Sanford Law Firm, PLLC, in Little Rock, Pulaski County, Arkansas, and I have been practicing law since 2001.

3.      I practice law full time and I manage the other fourteen attorneys in the firm.

4.      In the course of my law practice, I engage in a significant amount of wage and hour litigation—especially cases arising under the Fair Labor Standards Act and the Arkansas Minimum Wage Act—in which I usually represent Plaintiffs. A significant portion of my case load is in federal court, including trial work in cases arising under Title VII of the Civil Rights Act of 1964 and the Equal Pay Act, but mostly the Fair Labor Standards Act.

5.      I am licensed to practice law in all state and federal courts in the States of Arkansas, Colorado and Texas. I have also engaged in appellate practice.  I have handled cases before almost all county Circuit Courts in the Central and River Valley regions of Arkansas, the United States District Courts for the Eastern and Western Districts of Arkansas, the United States District Courts for the Eastern and Northern Districts of Texas, the Northern District of Oklahoma, the Northern District of Illinois, the United States District Court for the District of Colorado, the United States District Court

for the Eastern District of Michigan, the United States District Court for the District of Oregon, the United States District Court for the District of North Dakota, and the Fifth, Sixth and Eighth Circuit Courts of Appeals.

6.      In 2005, I was voted "Best Attorney" (tie) in a readers' poll published by *The Courier* in Russellville, Arkansas. Subsequently, in 2008, I served as the President of the Pope County Bar Association. In addition, I am a member of the American, Arkansas, and Pope County Bar Associations, the Arkansas Trial Lawyers Association, the National Employment Lawyers Association, and the Russellville Chamber of Commerce.

7.      I am familiar with the customary and reasonable fees charged by myself and by other attorneys in the Eastern District of Arkansas. Generally, the customary and reasonable fee charged for federal court work in Little Rock, Arkansas is $175.00 to $350.00 per hour, depending upon experience and specialty.

8.      The hourly rates charged by the attorneys of the Sanford Law Firm, PLLC, of $100.00 per hour for Attorney Tess Bradford; $150.00 per hour for Attorneys Daniel Ford, Sean Short, and Dominique King; $175.00 per hour for Attorney Stacy Gibson; $200.00 per hour for Attorney Joshua West; $250.00 per hour for Attorneys Vanessa Kinney and Anna Stiritz; and $315.00 per hour for Attorney Josh Sanford are typical of or less than the rates charged by other attorneys in the Western District of Arkansas who have similar qualifications, experience and reputation; the rates are reasonable.

9.      The rates of $60.00 per hour charged by the Sanford Law Firm, PLLC, for staff time and $75.00 per hour for law clerk time are likewise reasonable and comparable.

10.     In the recent past, I have been lead counsel on numerous wage and hour cases filed in United States District Courts throughout the nation, including the following: *Craig Lyons, et al. v. Con Agra*, 4:12-cv-245 (JM) (Eastern District of Arkansas) (over 700 plaintiffs); *Keyli Cruthis, et al. v. Visions, et al.*, 4:12-cv-244 (KGB) (Eastern District of Arkansas); *James Finley v. Universal Pressure Pumping, Inc.*, SA:12-ca-0654 (OG) (Western District of Texas); *Michael Alexander v. Hahn Appliance Center, Inc.*, 12-CV-257 (CVE-TWL) (Northern District of Oklahoma); *Chad Lochridge, et al. v. Lindsey Management, et al.*, 5:12-CV-05047 (JLH) (Western District of Arkansas); *Bill Hollomon, et al. v. AT&T Mobility Services, LLC*, 4:11-CV-600 (BRW) (Eastern District of Arkansas); *Jeffrey Bacon, et al. v. Eaton Aeroquip, LLC*, 2:11-cv-14103 (LPZ) (Eastern District of Michigan); *Karen "Kay" Roland v. Sharp County Post 336, et al.*, 1:11-CV-85 (DPM) (Eastern District of Arkansas); *Crystal Hilborn, et al. v. Visions, et al.*, 4:11-CV-0124 (BSM) (Eastern District of Arkansas); *Crystal Hilborn, et al. v. Prime Time Club, Inc.*, 4:11-cv-197 (BSM) (Eastern District of Arkansas); *Lacey Taylor, et al. v. Mary Rose Cullen, et al.*, 4:11-cv-269 (DPM) (Eastern District of Arkansas); *Bennie Watson, et al. v. Surf-Frac Wellhead Equipment Company, Inc.*, 4:11-CV-843 (JLH) (Eastern District of Arkansas); *Robert Terry, et al. v. City of Ola*, 4:11-cv-11-645 (JLH) (Eastern District of Arkansas); *Donald Bateman, et al. v. Frac Tech Services, LLC*, 6:11-cv-708 (Eastern District of Texas); *Kalie Brown, et al. v. Barney's Barn, Inc., d/b/a/ Peaches Gentlemen's Club*, 4:11-cv-224 (SWW) (Eastern District of Arkansas); *Jason Phillips v. Oil Patch Water and Sewer Services, LLC, et al.*, 4:11-cv-776 (JLH) (Eastern District of Arkansas); *David Delock, et al. v. Securitas Security Services USA, et al.*, 4:11-CV-520 (DPM) (Eastern District of Arkansas); *Karen Springs, et al. v. First Student, Inc.*, 4:11-

CV-240 (BSM) (Eastern District of Arkansas); and others.

11.     Following my graduation from law school, I founded my own practice—the Sanford Law Firm, PLLC—in Russellville in 2001. I opened an office in Little Rock in 2007 and now predominantly practice in the greater Central Arkansas region. Collectively, cases filed by the Sanford Law Firm since 2009 have resulted in more than $12,000,000.00 in settlement money and judgments for wage and hour violations for more than five thousand (5,000) clients across the nation.

12.     I am currently charging a paying client in Lonoke, Arkansas, $315.00 per hour.

B.     Attorney Joshua West

13.     Joshua West is a graduate of the University of Arkansas at Little Rock, William H. Bowen School of Law in 2012.  He graduated second in his class of one-hundred thirty-six.

14.     Mr. West is licensed to practice law in all courts in the State of Arkansas.

15.     During law school, Mr. West served as an Associate Editor for the UALR Law Review.  The UALR Law Review published Mr. West's note on Constitutional Law online.

16.     The Law School's Litigation Clinic selected Mr. West to receive a special license for the summer of 2011 to practice law under the supervision of a licensed attorney.  Mr. West accepted the offer and subsequently served in the Litigation Clinic.

17.     During the fall of 2011, Mr. West served as a judicial extern for Arkansas Supreme Court Justice Robert L. Brown.

18.     In 2013, Mr. West managed, drafted, and won an appeal to the Sixth Circuit Court of Appeals regarding a group of supervisors who were misclassified as exempt under the Fair Labor Standards Act.

19.     Mr. West has independently managed, litigated, and settled numerous civil cases for the Sanford Law Firm, both on the plaintiff's and the defendant's side, including cases under the Fair Labor Standards Act, the Arkansas Minimum Wage Act, and other cases involving breach of contract, replevin, and domestic relations.

20.     Mr. West has appeared numerous times in various courts in numerous counties in Arkansas, including Pulaski, Garland, Grant, Van Buren, and Independence counties, for contested motion hearings that required the presentation of testimonial and documentary evidence or oral argument.

21.     Since starting at the Sanford Law Firm in the fall of 2012, Mr. West has been continuously involved in drafting pleadings, motions, responses, and replies, and appeals, including numerous filings with more than ten different exhibits, in various federal courts in Arkansas, Texas, Colorado, and Michigan.

22.     Mr. West has also defended and prepared clients for numerous depositions in wage and hour cases like this one, including cases involving class claims and multi-plaintiff joinder claims.

23.     Mr. West is currently managing thirteen related FLSA cases in thirteen different states (Arkansas, Oklahoma, Missouri, Texas, Louisiana, Mississippi, Tennessee, Alabama, Florida, Georgia, South Carolina, North Carolina, and Kentucky) with over seven-hundred and sixty plaintiffs, serving as lead *pro hac vice* counsel in eleven of those states.

C.    Attorney Vanessa Kinney

24.    Attorney Vanessa Kinney is a 2007 high honors graduate of the University of Arkansas at Little Rock, William H. Bowen School of Law, graduating eighth in her class. She is licensed to practice law in all courts in the States of Arkansas.

25.    While attending law school, Ms. Kinney was a member of the University of Arkansas at Little Rock Law Review, and in the Winter of 2006 the Law Review published her article, The Path Leads to Nowhere: The Supreme Court Re-Examines the Trek Through the Political Thicket: Vieth v. Jubelirer, 541 U.S. 267 (2004), 28 UALR Law Rev. 251.

26.    Also while attending law school, Ms. Kinney was the recipient of the Shackleford Scholarship and the Harper and Mary Bower Harb Scholarship.

27.    Ms. Kinney has been an attorney with the Sanford Law Firm since obtaining her license to practice law in the Spring of 2008.

28.    Ms. Kinney has served as both lead attorney and co-counsel on several bench trials as well as jury trials in both federal and state court.

D.    Anna Stiritz

29.    Anna Stiritz graduated from the University of Arkansas School at Little Rock (now Bowen School of Law) in 1991. She is licensed to practice law in all courts in the State of Arkansas.

30.    Ms. Stiritz represented over 100 clients in various adoption, dependency-neglect, and miscellaneous cases from 1992–2002.

31.    Ms. Stiritz has been an attorney with Sanford Law Firm since 2002. Her work is exclusively with plaintiffs involved in Fair Labor Standards Act and Arkansas

Minimum Wage Act litigation.

32.     In the course of her employment with Sanford Law Firm she has assisted well over 4,000 clients with various aspects of their litigation including document preparation, discovery, responses and replies, and case management.

E.     <u>Stacy Gibson</u>

33.     Stacy Gibson graduated with honors from the University of Arkansas School of Law in 2014. She is licensed to practice law in all courts in the State of Arkansas.

34.     While attending law school, Ms. Gibson was a Note and Comment Editor for the Journal of Food Law & Policy.

35.     Ms. Gibson has managed, litigated, and settled over fifty civil and domestic relations cases for the Sanford Law Firm, both on the plaintiff's and the defendant's side, including over several cases under the Fair Labor Standards Act, the Arkansas Minimum Wage Act, and other cases involving complicated legal and factual issues.

36.     Ms. Gibson has appeared numerous times in various state circuit courts throughout Arkansas, including in Pulaski, Saline, Jefferson, White, and Faulkner Counties for contested motion hearings and trials that required the presentation of testimonial and documentary evidence.

37.     Since starting at the Sanford Law Firm in the fall of 2014, Ms. Gibson has been continuously involved in all aspects of federal court litigation: drafting pleadings, motions, responses, and replies, discovery, briefs and settlement documents; and managing depositions, and case strategy, all in various federal courts in Arkansas,

Texas and Mississippi.

38.    Ms. Gibson has also prepared clients for depositions in wage and hour cases like this one, including cases with many plaintiffs.

39.    Ms. Gibson is currently admitted *pro hac vice* to the U.S. District Court for the Southern District of Mississippi where she is lead counsel on a Fair Labor Standards Act collective action consisting of nearly 300 potential class members.

F.    <u>Daniel Ford</u>

40.    Daniel Ford is a Summa Cum Laude graduate of the University of Arkansas at Little Rock, William H. Bowen School Law in 2014.  He graduated sixth in his class.

41.    Mr. Ford is licensed to practice law in all courts in the State of Arkansas.

42.    During law school, Mr. Ford served as Assistant Managing Editor for the UALR Law Review and as a member of the UALR Journal for Social Change and Public Service, which published Mr. Ford's note on campaign finance online.

43.    Additionally, Mr. Ford was President of Phi Delta Theta legal fraternity, served on the Moot Court and was a research assistant for two years to a professor drafting articles on contract and bankruptcy law.

44.    During the fall of 2014, Mr. Ford served as a judicial extern in the U.S. District Court for Eastern District of Arkansas, for the Hon. Kristine G. Baker.

45.    Following law school, Mr. Ford began practice at a large civil litigation defense firm located in Arkansas, actively defending and taking numerous depositions in Fair Labor Standards Act cases among a variety of other legal areas.

46.    In 2016, Mr. Ford became the law clerk for the Hon. Timothy D. Fox of the

Pulaski County Circuit Court, where he developed significant experience drafting opinions, assisting in the determination of discovery disputes, performing legal research, and managing case dockets.

47.     Since starting at the Sanford Law Firm in early 2017, Mr. Ford has been continuously involved in all stages of complex Fair Labor Standards Act litigation across the country, including the drafting of pleadings and motions, preparing and answering written discovery, and taking and defending depositions, and case strategy, all in various federal courts in Arkansas, Texas and North Dakota.

48.     Mr. Ford has defended and prepared clients for numerous depositions in wage and hour cases like this one.

49.     Mr. Ford has recently been highly involved in two separate complex Fair Labor Standards act wage violation cases, each with more than 200 plaintiffs and extensive deposition practice, successfully helping to navigate them through the discovery phase of the lawsuit to settlement.

G.     Sean Short

50.     Sean Short is a 2013 graduate of Washington University in St. Louis School of Law. He is licensed to practice law in all courts in the State of Arkansas.

51.     While attending law school in the spring of 2013, Mr. Short was accepted into the Washington University School of Law Congressional and Administrative Law Clinical Program, where he served as a full-time law clerk in the U.S. Department of Justice's Federal Tort Claims Act section in Washington, D.C.

52.     Following graduation from law school, Mr. Short worked in Bangkok, Thailand, in the dispute resolution and litigation department of one of the largest law

firms in Southeast Asia where he advised multinational corporations on cross-border transactions and disputes.

53.     Since 2016, Mr. Short's practice has been devoted to wage and hour litigation brought under the FLSA, ranging from single-plaintiff actions to collective actions, and has presented a CLE program on calculating damages in FLSA cases.

54.     Mr. Short has prepared clients for numerous depositions in wage and hour cases like this one, including cases involving class certification, and has also participated in mediation of collective action cases.

H.      Other Attorneys and Staff

55.     Other attorneys and staff worked on this case for approximately 2.7 hours. Their rates are reasonable in relation to the rates of Mr. Sanford, Mr. West, Ms. Stiritz, Mr. Ford, Mr. Short, Ms. Gibson and Ms. Kinney, and in relation to their job duties.

## II. TIME EXPENDED IN THIS CASE

56.     The Sanford Law Firm pursued discovery in this case with organized efficiency. The Firm worked to avoid disputes wherever possible, including having several telephonic meetings and email threads with Defendants' counsel to attempt to resolve issues without the involvement of the Court.

57.     The request for attorney's fees and costs made here by Plaintiffs is based upon contemporaneous time and expenses records maintained by my law firm as a matter of ordinary and customary business practice. The time and billing records identify the amount of time expended, the tasks performed, the rate of the particular timekeeper involved, and the costs incurred.

58.     The total of attorney's fees expended through January 19, 2018, are

$71,322.00.

## III.THE REASONABLENESS OF THE TIME EXPENDED

59.     As the attorney in charge of this case, I am familiar with the work that has

been performed and the time that has been expended in this case.

60.     A summary of the time spent by each entrant follows in the table below:

| Attorney Name: | Hourly Rate: | Hours Billed: | Amount Billed: |
|---|---|---|---|
| Anna Stiritz | $250.00 | 18.60 | $4650.00 |
| Daniel Ford | $150.00 | 35.40 | $5310.00 |
| Dominque King | $150.00 | .70 | $105.00 |
| Josh West | $200.00 | 131.20 | $26240.00 |
| Law Clerk | $75.00 | 1.40 | $105.00 |
| Sean Short | $150.00 | 42.00 | $6300.00 |
| Stacy Gibson | $175.00 | 17.50 | $3062.50 |
| Tess Bradford | $100.00 | .10 | $10.00 |
| Josh Sanford | $315.00 | 80.30 | $25294.50 |
| Vanessa Kinney | $250.00 | .50 | $125.00 |

61.     In this case, the Sanford Law Firm agreed to representation on a pure

contingency fee basis; thus, the Sanford Law Firm's only opportunity for recovery of

attorney's fees incurred on Plaintiffs' behalf was either through an express agreement with

opposing counsel or a judgment in favor of Plaintiffs and an award of attorney's fees from

the Court.

62.     Further, the Sanford Law Firm advanced or incurred all costs requested

herein on behalf of Plaintiffs. The total costs expended are $3,447.07. A true and

accurate copy of the billing statements showing the reasonable costs from filing to the

date of the Court's is attached hereto as Exhibit A.

63.     I believed this case was meritorious, but Plaintiffs—as is true with virtually all

wage claim plaintiffs—were simply not in a position to pay costs and hourly fees

indefinitely for the pursuit of the claims in this case, however meritorious they might be.

On this 30th day of January, 2018, I hereby affirm under penalty of perjury that the above is true and correct.

/s/ Josh Sanford
**JOSH SANFORD**

# EXHIBIT A

# SANFORD LAW FIRM, PLLC

| **Russellville Office** | **Little Rock Office** |
|---|---|
| 103 West Parkway, Suite C | One Financial Center |
| Post Office Box 39 | 650 South Shackleford, |
| Russellville, Arkansas 72811 | Suite 411 |
| Telephone: (479) 880-0088 | Little Rock, Arkansas 72211 |
| Facsimile: (888) 787-2040 | Telephone: (501) 221-0088 |
| Email: tracy@sanfordlawfirm.com | Facsimile: (888) 787-2040 |
| | Email: |
| | tracy@sanfordlawfirm.com |

Paige Greenwell
January 30, 2018
**12984**
Sanford Law Firm File #17-035 JW

Additional Charges :

| | | Qty | Price | Amount |
|---|---|---|---|---|
| 4/20/2017 | Travel expenses: Josh West Hotel Room for 4/24/2017 Deposition in Tulsa | 1 | 132.06 | 132.06 |
| | Travel expenses: Daniel Ford Hotel Room for 4/24/2017 Deposition in Tulsa | 1 | 132.06 | 132.06 |
| | Travel expenses: Sean Short Hotel Room for 4/24/2017 Deposition in Tulsa | 1 | 132.06 | 132.06 |
| | Travel expenses: Josh West Hotel Room for 4/25/2017-4/28/2017 Depositions in Oklahoma City | 1 | 339.70 | 339.70 |
| | Travel expenses: Sean Short  Hotel Room for 4/25/2017-4/28/2017 Depositions in Oklahoma City | 1 | 339.70 | 339.70 |
| | Travel expenses: Daniel Ford  Hotel Room for 4/25/2017-4/28/2017 Depositions in Oklahoma City | 1 | 509.40 | 509.40 |
| | Travel expenses: Daniel Ford Rental Car for 4/24/2017-4/28/2017 Depositions in Oklahoma | 1 | 251.67 | 251.67 |
| | Travel expenses: Sean Short and Josh West  Rental Car for 4/24/2017-4/28/2017 Depositions in Oklahoma | 1 | 251.67 | 251.67 |
| 5/3/2017 | Postage | 1 | 0.49 | 0.49 |
| | Postage | 1 | 8.34 | 8.34 |
| 5/4/2017 | Certified Mail | 1 | 8.37 | 8.37 |
| | Travel expenses - Sean Short Travel Reimbursement | 1 | 633.94 | 633.94 |
| 5/24/2017 | Postage | 1 | 21.90 | 21.90 |
| 6/6/2017 | Pro Hac Vice Filing Fee - **Sarah J. Arendt** | 1 | 100.00 | 100.00 |

Paige Greenwell

Page     2

| | | Qty | Price | Amount |
|---|---|---|---|---|
| 6/6/2017 | Pro Hac Vice Filing Fee - **Steven P. Schneck** | 1 | 100.00 | 100.00 |
| 7/3/2017 | Travel expenses - Josh Sanford Flight for 9/14/2017 Mediation | 1 | 197.97 | 197.97 |
| 8/17/2017 | Travel expenses: Josh Sanford Flight for 9/14/2017 Mediation | 1 | 172.96 | 172.96 |
| 9/11/2017 | Mileage Expense to Xenia Anson for 9/8/2017 Depositions in OKC | 1 | 69.00 | 69.00 |
| 9/14/2017 | Travel expenses: Josh Sanford Uber | 1 | 7.85 | 7.85 |
| | Travel expenses: Josh Sanford Uber | 1 | 6.26 | 6.26 |
| | Travel expenses $28.00- parking | 1 | 28.00 | 28.00 |
| 11/10/2017 | Postage | 1 | 2.66 | 2.66 |
| 11/16/2017 | Travel expenses $16.01-Uber | 1 | 16.01 | 16.01 |
| 11/21/2017 | Travel expenses: Josh West Flight for 11/20/2017 Deposition in OK | 1 | 185.00 | 185.00 |
| | Total additional charges | | | $3,647.07 |
| | Accounts receivable transactions | | | |
| 6/12/2017 | Payment - Thank You. Check No. 3040 | | | ($200.00) |
| | Total payments and adjustments | | | ($200.00) |
| | Balance due | | | $3,447.07 |

**WE ACCEPT MASTERCARD, VISA & DISCOVER**